502 A.2d 148

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**George F. RITCHIE, Appellee.**

Supreme Court of Pennsylvania.

Argued March 4, 1985.

Decided Dec. 11, 1985.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Edward Marcus Clark, Asst. Dist. Atty., Pittsburgh, for appellant.

John H. Corbett, Jr., Office of the Public Defender, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The Commonwealth of Pennsylvania appeals, by allowance, the order of the Superior Court vacating judgment of sentence and remanding for further proceedings. We affirm and order the case remanded for proceedings consistent with this opinion.

Appellee, George F. Ritchie, stood jury trial in the Court of Common Pleas of Allegheny County, and was convicted of rape, involuntary deviate sexual intercourse, incest and corruption of minors.[1] The charges arose in connection with incidents allegedly involving sexual contacts between appellee and his minor daughter over a period of years, including one particular incident on June 11, 1979. Appellee's daughter was twelve years old at that time.

The circumstances giving rise to the instant appeal began in 1978, when appellee's counsel, in the course of preparing the defense, served a subpoena upon Child Welfare Services (CWS) seeking records pertaining to the complainant,[2] which records CWS refused to produce on the basis of the alleged confidentiality of the records. At a pretrial conference held in chambers before the trial court, counsel for appellee argued a motion for sanctions and sought access to the records in order to gain information which might im-

---

1. Appellee's trial was his second, following a mistrial.

2. There is evidence that Child Welfare Services conducted an interview and examination of the complainant as early as 1978, following a report of abuse made by an unidentified source.

peach or discredit the complainant, or which might reveal potential witnesses. Moreover, defense counsel sought particular information concerning a medical examination of the victim which, according to his information, occurred on September 6, 1978, in conjunction with a CWS investigation. The trial court accepted the assertion of a CWS representative that such information was not in the file.[3] The court then issued an order to the following effect:

> And now, October 23, 1979, after hearing in chambers, the court having viewed the records of the Child Welfare Services, the Court finds that no medical records are being held by the Child Welfare Services that would be of benefit to the defendant in this case. Counsel for the Commonwealth, and the defendant, and a representative of the Child Welfare Services being present at the hearing.

Hearing Transcript (H.T.) October 23, 1979, at 15. Appellee's counsel immediately objected to that order.

On appeal, the Superior Court rejected appellee's claims concerning the sufficiency and admissibility of certain evidence, but agreed with his contention that the trial court erred in refusing to grant appellee access to the Child Welfare Services [4] file pertaining to the examination of the complainant. The Superior Court held that a statutory provision in the Child Protective Services (Law) [5] regarding confidentiality of the records must not be permitted to infringe upon appellee's Sixth Amendment rights. *Commonwealth v. Ritchie*, 324 Pa.Super. 557, 472 A.2d 220 (1984). Nonetheless, that court refused to direct that the records be made available to appellee. Instead, relying by analogy on the decision of this Court in *Matter of Pittsburgh Action Against Rape, (Matter of Pittsburgh)*, 494 Pa. 15, 428 A.2d 126 (1981), the Superior Court fashioned a remedy whereby the trial court would, after an *in camera*

---

**3.** Pretrial Hearing Transcript, October 23, 1979, at 5.

**4.** That agency is now designated Children and Youth Services.

**5.** Act of November 26, 1975, P.L. 438, No. 124 §§ 1–26, 11 P.S. § 2201, *et seq. See also,* text accompanying n. 10.

inspection of the file, make available to appellee only those parts of the file which it determined to constitute verbatim statements (or the equivalent) by the complainant regarding abuse. *Matter of Pittsburgh, id.,* 494 Pa. at 28, 428 A.2d at 132. That court further directed that counsel be permitted access to the entire record reviewed *in camera* by the trial court, in order to argue relevance.[6] It is the appropriateness of this remedy which lies at the heart of this appeal.

In their arguments both parties challenge the Superior Court's disposition. The Commonwealth argues that the records are presumptively confidential under the relevant statute.[7] Further, the Commonwealth argues that, if appellee's Sixth Amendment rights require that he be given access to statements contained in the CWS files, then that access should be restricted solely to such statements, and appellee's counsel should not be permitted access to the entire file to argue relevance. Appellee, on the other hand, argues that statements contained in the file constitute the minimal discovery to which he is entitled, and that, in fact, his Sixth Amendment rights require that he gain access to the entire file so that determinations concerning what information might be useful to the defense may properly be made by an advocate. For the reasons outlined below, we find persuasive appellee's arguments, and hold that the trial court erred in refusing to allow the defense access to the CWS files.

As indicated above, the Superior Court found guidance in the decision of this Court in *Matter of Pittsburgh.* In that case, we were asked to fashion a rule of confidentiality to protect information and materials in the files of the Pittsburgh Action Against Rape (PAAR), a center providing counselling and help to victims of rape. The appellant there had asked for the right to inspect communications between the rape counsellors and the victim. While we declined an extension of the common law to create an absolute privi-

6. *Commonwealth v. Ritchie,* 324 Pa.Super. 557, 568, 472 A.2d 220, 226 (1984).

7. 11 P.S. § 2215.

lege,[8] we fashioned an *in camera* proceeding wherein defense counsel were permitted an inspection of "only those statements of the complainant contained in the file which bear on the facts of the alleged offense."[9]  In the instant case, we are asked for more; we are asked for a review and inspection by counsel of all materials in the possession of CWS, that their relevancy might be determined and their uses in testing credibility ascertained.  The sticking place is that the appellant is armed with a statute providing for confidentiality of the files of a child; and while they do not seek an absolute privilege under the statute, they take umbrage that the Superior Court directed:

> ... counsel should be permitted access to this record in order to argue the relevance of the material in accordance with this decision.  Counsel, of course, are permitted access to this record for this purpose only and are otherwise bound by the confidential nature of the material in the record.

*Ritchie, supra,* 324 Pa.Super. at 568, 472 A.2d at 226.

In ascertaining the intent of the General Assembly we are guided by principles of statutory construction, including that presumption that "[e]very statute shall be construed, if possible, to give effect to all its provisions."  1 Pa.C.S. § 1921(a).  Moreover, it may be presumed "[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth."  1 Pa.C.S. § 1922(3).  Bearing these principles in mind, we turn to an analysis of the statute.

The Child Protective Services Law was enacted to identify and protect children suffering from abuse and to provide rehabilitative services to such children and their families.[10] In addition to providing procedures concerning the investi-

---

**8.** The General Assembly subsequently codified a privilege for sexual assault counsellors by the Act of Dec. 23, 1981, P.L. No. 169 § 1, 42 Pa.C.S. § 5945.1.

**9.** *Matter of Pittsburgh Action Against Rape (Matter of Pittsburgh ),* 494 Pa. 15, 19, 428 A.2d 126, 127–28 (1981).

**10.** See n. 5 *supra.*

gation and reporting of abuse cases,[11] the Law has a section providing for the confidentiality of such records, 11 P.S. § 2215(a). The confidentiality provision provides that reports made pursuant to the Law shall be confidential, but shall be made available to certain enumerated classes of officials and groups. 11 P.S. § 2215(a). Among those to whom such reports may be made available are included, notably, courts of competent jurisdiction pursuant to court order, § 2215(a)(5). In addition, access must also be granted to guardians *ad litem*, officials of the Department of Public Welfare, and others.[12] Thus, this confidentiality provision, with all its enumerated exceptions, differs from the confidentiality and privilege provisions which the General Assembly has enacted concerning other counsellors, such as licensed psychologists, 42 Pa.C.S. § 5944; or school personnel, 42 Pa.C.S. § 5945; or sexual assault counsellors, 42 Pa.C.S. § 5945.1.

11. P.S. §§ 2204–2214.

12. At the time of appellee's trial, Section 2215(a) provided:
Confidentiality of Records. (a) Except as provided in section 14, reports made pursuant to this act including but not limited to report summaries of child abuse made pursuant to section 6(b) and written reports made pursuant to section 6(c) as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of the department, a county public child welfare agency or a child protective service shall be confidential and shall only be made available to:
(1) A duly authorized official of a child protective service in the course of his official duties.
(2) A physician examining or treating a child or the director or a person specifically designated in writing by such director of any hospital or other medical institution where a child is being treated, where the physician or the director or his designee suspect the child of being an abused child.
(3) A guardian ad litem for the child.
(4) A duly authorized official of the department in accordance with department regulations or in accordance with the conduct of a performance audit as authorized by section 20.
(5) A court of competent jurisdiction pursuant to a court order. Act of Nov. 26, 1975, P.L. 438, No. 124 § 15, 11 P.S. § 2215.
The law has subsequently been amended, and now provides for an expanded class of officials and groups to whom the reports may be made available, including the attorney general, county commissioners, and law enforcement officials. *See generally,* 11 P.S. § 2215(a).

The legislative purpose herein was clearly to create an agency, not only to investigate allegations of child abuse, but to provide care, shelter, and erase where possible the cruel stains upon their innocence. To accomplish this the statute provides for confidentiality and, as well, for exceptions to the confidentiality imposed; all are avenues to help. As noted, one of the exceptions is to a court of competent jurisdiction, to which, by court order, all materials in the files of the child are necessarily accessible.

There is, of course, a difference between the types of protection that can be afforded a victim and one accused. The difference in all such considerations is the Sixth Amendment to the Constitution of the United States. There can be no absolute protections that cancel the fundamental mandates of that Amendment; all that can be accomplished is a careful balance between them, the counters always in favor of the Amendment.

■ The Sixth Amendment provides that an accused, "[i]n all criminal prosecutions ... shall enjoy the right ... to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor." [13] The extent to which a criminal defendant can cross-examine the witnesses testifying against him is controlled by the confrontation clause of the Amendment. The purpose of that clause is to provide an accused with an effective means of challenging the evidence against him by testing the recollection and probing the conscience of an adverse witness. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Moreover, as the United States Supreme Court stated in *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931), and more recently echoed with approval in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968):

It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the

---

**13.** U.S. Constitution, Amendment VI.

opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.... To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Id.* at 132, 88 S.Ct. at 750.

The United States Supreme Court has consistently emphasized the role of the truth-seeking process in our system of criminal justice. As it observed in *Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Claims of confidentiality or privilege, whatever their basis, necessarily carry with them the possibility of infringing upon that truth-seeking process. As Mr. Chief Justice Burger, writing for a unanimous court, observed of such privileges, "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).[14] In that case, the Court held that a claim of executive privilege, itself of constitutional dimension, may not prevail as against the need for disclosure there at issue.

The United States Supreme Court has also given close attention to state claims of privilege or confidentiality threatening to infringe upon a criminal defendant's federal constitutional rights. The Court has in such cases carefully safeguarded the Sixth Amendment rights of a criminal defendant to present relevant evidence on direct and cross-examination. In *Smith v. Illinois, supra,* the Court held that, notwithstanding a contrary state evidentiary law, the confrontation clause guarantees a defendant the right to

**14.** *See Matter of Pittsburgh, supra,* 494 Pa. at 28, 428 A.2d at 131 (1981).

cross-examine a prosecution witness as to his real name and address. In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Court held that the compulsory process clause requires, even as against a contrary state provision, that a defendant be able to present the favorable testimony of a co-defendant. In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court held that the right of confrontation was superior to a state law concerning the confidentiality of juvenile proceedings. The Court expressed concern that the effect of the state's confidentiality provision in that case may have been to allow the testifying witness to give a questionably truthful answer, and to prohibit the defendant from testing the truth of that testimony through the process of cross-examination. *Id.* at 314, 94 S.Ct. at 1109. That concern, inherent in the whole confidentiality/privilege area, may not be ignored without Sixth Amendment ramifications.

Turning to our own case law, we have set precedent in *Matter of Pittsburgh* that is useful here. In that case, we declined to recognize a common law absolute privilege, just as the General Assembly has declined to do in the instant case by providing exceptions in the statute. In *Matter of Pittsburgh,* we gave what we were asked, to wit, inspection of communications between the victim and personnel of PAAR. Now we are asked for the right to inspect the entire file. The rationale for such a request is the same rationale underlying the right granted in *Matter of Pittsburgh,* to inspect prior statements of a victim or witness. In short, as with prior statements, the eye of an advocate may see connection and relevancy in any material gathered from the victim, other witnesses, or circumstances developed by the investigation of a child.[15] *See also, Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977). "The search for truth" and the quest for "every man's evidence"

15. This conclusion applies with special strength under the amended provisions of the statute, which would seem to enable the prosecution to gain access to the records, either directly or in the course of investigations by law enforcement officials. *See* n. 13, *supra,* and 11 P.S. § 2215(a) generally.

so plainly the basis of the Sixth Amendment, and so aptly applied in *Matter of Pittsburgh*, are as applicable to any material as to prior statements. When materials gathered become an arrow of inculpation, the person inculpated has a fundamental constitutional right to examine the provenance of the arrow and he who aims it. Otherwise, the Sixth Amendment can be diluted to mean that one may face his accusers or the substance of the accusation, except when the accuser is shielded by legislative enactment.

Fortunately, we are not required here to find the present statute unconstitutional. The General Assembly has properly excepted courts of competent jurisdiction and has clearly recognized that material in the child's file cannot be denied them. Since the use of that which is within the jurisdiction of the court must conform to the fundamental law of the land, the defendant's entitlement to them is therefore to be determined by those Sixth Amendment principles heretofore considered.

■ Given those principles, we must conclude that the trial court erred in refusing appellee access to the CWS files. As in *Davis, supra*, we find that the Commonwealth's interest in maintaining the confidentiality of these records may not override a defendant's right to effectively confront and cross-examine the witnesses against him. We agree with appellee that it would be absurd to read the statute as providing that the records be made available to a court of competent jurisdiction, while denying any use of them to the litigants in a criminal case before such courts. Notwithstanding the trial court's "finding" that the files contained nothing that would benefit appellee, it is apparent that appellee was denied the opportunity to have the files reviewed with the eyes and the perspective of an advocate. Neither the confidentiality provision of the Child Protective Services Law nor any other argument yet advanced justifies that denial.

Accordingly, we remand the matter to the trial court with instructions that appellee, through his counsel, be granted

access to the CWS files.[16] Counsel will then be permitted to argue to the trial court what use, if any, could have been made of the files in cross-examining the complainant or in presenting other evidence. The Commonwealth may attempt to establish that any error was harmless. *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978). Unless the trial court is convinced that any error was necessarily harmless, it shall vacate judgment of sentence and grant appellee a new trial. *Commonwealth v. Hamm, supra.*

The case is remanded for proceedings consistent with this opinion.

LARSEN, J., files a dissenting opinion in which HUTCHINSON, J., joins.

HUTCHINSON, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

The majority purports to conduct a "careful balance" between a defendant's rights under the Sixth Amendment to the United States Constitution to confront witnesses against him and to compulsory process of witnesses, on the one hand, and the victim's rights and other Commonwealth interests in maintaining the confidentiality of files held by child protective service agencies in child abuse cases, on the other. However, the majority weights this "careful balance" heavily in favor of the defendant when it declares "the counters always in favor of the [Sixth] Amendment." At 364. A truly careful balance must consider *all* of the respective interests at stake—not only the need of the defendant for disclosure of the information requested, but also the extent of the infringement of defendant's Sixth Amendment rights, if any, that would result if disclosure

16. As we emphasized in *Matter of Pittsburgh, supra,* 494 Pa. at 28–29, 428 A.2d at 132–133, the trial court should take appropriate steps to insure against the improper dissemination of sensitive material gleaned from the files. Such steps might include the fashioning of appropriate protective orders, or conducting certain proceedings *in camera,* mindful always, however, of the right of appellee, through his counsel, to gain access to the information.

were prevented, as well as the need to preserve the confidentiality of the material sought.

The majority's decidedly *un*careful balance exaggerates the first consideration and all but ignores the latter two, and for what? The victim's rights and society's needs are ignored because the defense attorney muttered some nebulous assertions that "there could be possible witnesses disclosed.... there could be matters in [the Child Welfare Services files] that would be favorable to the defendant." Notes of Testimony (N.T.), Pretrial Conference Hearing on Defendant's Motion for Sanctions, October 23, 1979 at 10. In allowing counsel on remand to scour the entire Child Welfare Service (CWS) file relating to the young victim in this case on no more than the flimsiest assertion that he *might* find *some matters or witnesses* that would be helpful to appellee, the majority has licensed a fishing expedition. Since *any* defense attorney in *any* criminal prosecution can *always* assert that there *may be some matters that could be helpful* to the accused, the majority's decision today does not just undermine the confidentiality of child protective service agency files, it *eliminates it* whenever a case against an accused child abuser is prosecuted.

As I believe the majority's decision violates the Child Protective Services Law (the Act), violates the dictates of and principles enunciated by this Court in the *Matter of Pittsburgh Action Against Rape (PAAR)*, 494 Pa. 15, 428 A.2d 126 (1981), and is not compelled by the Sixth Amendment, I emphatically dissent.

The Child Protective Services Law, Act of November 26, 1975, P.L. 438, No. 124, *as amended*, 11 P.S. §§ 2201–2224 (Supp.1985) declares that:

> Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. *It is the purpose of this act to encourage more complete reporting of suspected child abuse* and to establish in each county a child protective service capable of investigating such reports swiftly and competently, providing protection for children from fur-

ther abuse *and providing rehabilitative services for children and parents involved* so as to ensure the child's well-being and to preserve and stabilize family life wherever appropriate.

11 P.S. § 2202, Findings and purpose. To achieve this purpose, the Act establishes an elaborate mechanism coordinating statewide and local agencies which are required to provide, maintain and where appropriate, expunge comprehensive records and files of child abuse complaints and investigations. 11 P.S. §§ 2203–2207, 2214. An integral part of this mechanism is the confidentiality of records. Section 2215, Confidentiality of records, provides that "reports made pursuant to this act including but not limited to report summaries of child abuse ... as well as any other information obtained, reports written or photographs or x-rays taken ... in the possession of the department, a county children and youth social service agency or a child protective service *shall be confidential and shall only be made available to....*" eleven specifically enumerated categories of persons or institutions. 11 P.S. § 2215(a). The Act establishes that there is a compelling state interest in maintaining the confidentiality of records *except* in the enumerated instances.

Clearly, the confidentiality of records is not absolute under this legislative scheme. A court of competent jurisdiction is specifically authorized to enter an order of disclosure. 11 P.S. § 2215(a)(5). The Act does not set out the parameters of the court's authority in a criminal prosecution to order disclosure of the presumptively confidential files and records to defense counsel upon request; however, this Court's recent decision in the *PAAR* case [1] does establish those parameters, as the Superior Court correctly held.

---

1. In *PAAR*, this Court was called upon to recognize a common law privilege against disclosure of confidential communications between rape crisis counselors and the rape victims, in the absence of any legislation recognizing such privilege. I would have recognized an absolute privilege for such confidential communications. *PAAR*, 494 Pa. at 34–63, 428 A.2d at 135–150 (Larsen, J., dissenting). (Shortly after this Court's decision in *PAAR*, the legislature acted swiftly to enact an absolute privilege for confidential communications between

Judge Cavanaugh, speaking for the Superior Court panel in the instant case, stated:

In determining what information appellant is entitled to we are guided by the Pennsylvania Supreme Court's holding in *Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 428 A.2d 126 (1981). The issue in that case was "the extent to which a court presiding over a rape trial may authorize counsel for the accused seeking to impeach the credibility of the complainant to inspect a rape crisis center file containing communications between the complainant and rape crisis center personnel." 494 Pa. at 19, 428 A.2d at 127. The court there recognized the "societal interest" in promoting communications between rape crisis center personnel and persons seeking the center's assistance, but it also recognized the "compelling societal interest in the truth-seeking function of our system of criminal justice." 494 Pa. at 19, 428 A.2d at 127. In order to protect both interests, the court held that upon defense request, a trial court should authorize defense inspection of that portion of the crisis center's file which reflects verbatim statements of the complainant bearing on the facts of the alleged offense.

... [W]e feel that the competing interests involved in *Matter of Pittsburgh Action Against Rape* are similar to those involved here and we are persuaded that the procedure adopted by the Supreme Court there should also be applied in the instant case. We hold, therefore, that appellant is entitled to inspect any portion of CWS' files which reflects statements regarding abuse made by Jeanette to the CWS' worker who examined her.

324 Pa.Super. at 566, 472 A.2d at 225. The Superior Court also followed the *in camera* procedures and substantive limitations established by this Court in *PAAR,* namely that:

sexual assault counselors and sexual assault victims. 42 Pa.C.S.A. § 5945.1.) In the instant case we do not address the issue of whether the common law would or should recognize an absolute privilege for confidential communications between child protective service agency personnel and abused children, for the legislature has spoken and has created a qualified privilege against disclosure of confidential records maintained by child protective service agencies.

(1) only "notes that are verbatim accounts of the complainant's declarations and notes that the complainant has approved as accurately reflecting what she said" are to be inspected by defense counsel; (2) the trial court is to conduct an *in camera* inquiry to determine whether the matters contained in the rape crisis counselor's files are such verbatim only "statements"; (3) after the trial court identifies the verbatim statements of the complainant, the defense counsel is to examine "these statements with an eye toward the utility or permissibility of their ultimate use at trial"; and (4) the defense counsel need not be given access to all statements in the file—rather, the court is to withhold from defense inspection "statements contained in a ... file [that] have no bearing whatsoever on the facts of the alleged offense and [that] relate instead only to ... counselling services...." 494 Pa. at 28–29, 428 A.2d at 132. The majority in *PAAR*, therefore, did conduct a "careful balance" of competing interests, including the Sixth Amendment right to confront adverse witnesses, and limited defense counsel's access to the rape crisis counselor's files as outlined above. Defense counsel was not permitted to rummage through the files for any "matters that could be helpful", but was only permitted to inspect statements which defense counsel had specifically requested and which the trial court identified as substantially verbatim accounts of the victim, an item (prior statements) that has traditionally been available and highly beneficial to the defendant for use in cross-examining a witness. The need by the defendant for such specific information contained in PAAR's files was felt to outweigh the victim's and Commonwealth's interests in maintaining confidentiality, but the *in camera* procedures set forth in *PAAR* were carefully crafted to tread as lightly as possible upon that confidentiality and to extract only that specific information requested by counsel and historically recognized as necessary and beneficial in the cross-examining of witnesses.

Nevertheless, the majority discards *PAAR*'s "careful balance", and allows defense counsel unfettered access to the

CWS files simply because "[n]ow we are asked for the right to inspect the entire file." At 367. In the majority's view, the Sixth Amendment "counters" (the right to confront adverse witnesses and to compulsory process of witnesses) are so heavy as to require unrestricted access by a defendant to scrutinize an entire confidential file in the possession of a child protective service agency *merely* because the defendant has vaguely suggested that there may be material in there that *could be* helpful. I do not believe the Sixth Amendment requires such intrusion into records that the General Assembly has seen fit to cloak with a privilege of confidentiality.

As the United States Supreme Court most recently stated:

> " 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " [*Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)] at 315–316 [94 S.Ct. at 1109–1110] (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940) (emphasis in original)). Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.... This conclusion is confirmed by the fact that the assurances of reliability our cases have found in the right of cross-examination are fully satisfied in cases such as this one ...: the factfinder can observe the witness' demeanor under cross-examination, and the witness is testifying under oath and in the presence of the accused.

*Delaware v. Fensterer,* —— U.S. ——, 106 S.Ct. 292, 88 L.Ed.2d 15, per curiam (1985) (failure of expert witness to recall the method of scientific analysis he used to reach his opinion did not deprive defendant of his right to confront and to effectively cross-examine adverse witnesses; State Supreme Court summarily reversed).

The constitutional rights to confront adverse witnesses and to compulsory process, both federal and state, are *not*

*absolute.*  As this Court unanimously stated in *Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d 624 (1983):

It is clear that under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor.  Pa. Const. art. I § 9.  *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).  However, *this right is qualified to the extent of existing testimonial privileges of witnesses, including the privilege against self incrimination.*  *Id.* at 23, n. 21, 87 S.Ct. at 1925, n. 21.

*Id.,* 501 Pa. at 531, 462 A.2d at 627 (defendant's right to compulsory process not abridged by potential defense witness' assertion of privilege against self-incrimination).  Or, as the United States Supreme Court phrased it in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974):

To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

Only recently the Court restated the ancient proposition of law, albeit in the context of a grand jury inquiry rather than a trial,

"that 'the public ... has a right to every man's evidence,' *except for those persons protected by a constitutional, common-law, or statutory privilege....*"

*Id.* at 709–10, 94 S.Ct. at 3108 (citations omitted).  *See also Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (Court weighed competing interests to accomodate "tension between the right of confrontation and the state's policy of protecting the witness with a juvenile record"); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (right to confront witness not absolute; where witness unavailable, preliminary hearing testimony of that witness may be introduced if it bears sufficient indicia of reliability); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19

L.Ed.2d 956 (1968) (right of cross-examination fundamental to right of confrontation, but cross-examination is not unlimited and may be restricted if questioning goes beyond the bounds of proper cross-examination). In *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court held that the privilege against disclosure of an informer's identity did not violate the defendant's right to confront adverse witnesses under the circumstances, stating "no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *See generally* Annot., *Federal Constitutional Right to Confront Witnesses—Supreme Court Cases,* 23 L.Ed.2d 853 (1970). Accordingly, when a defendant asserts the Sixth Amendment right to confront adverse witnesses or to compulsory process of witnesses against a claim of testimonial privilege, that "careful balance" must take place which will "depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the [information sought], and other relevant factors." *McCray v. Illinois, supra* at 386 U.S. 310, 87 S.Ct. at 1062, *quoting Roviaro v. United States,* 353 U.S. 53, 61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

Since the particular circumstances of each case are critical to this balance, it is important to identify just what we are dealing with in this case—and what we are not. I begin with what we are *not* dealing with.

We do not deal with exculpatory material which the defendant has requested and which is in the possession of the Commonwealth. Although the Act authorizes disclosure of child protective service agency files to law enforcement officials investigating cases of child abuse, 11 P.S. § 2215(9) and (10), there is no indication that any law enforcement officials ever had access to the CWS files in question. Moreover, it is clear from the record that the prosecution did not have any information from the CWS

records in its possession nor did the Commonwealth use CWS records in any way to prosecute appellee.

Defense counsel filed a motion and application for discovery pursuant to Pa.R.Crim.P. Rule 305. The motion tracked the language of Rule 305 and included requests for "any evidence favorable to the accused ... in the possession or control of the attorney for the Commonwealth" and for "results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph ... or other physical or mental examinations of Jeanette Biles." The court found that the Commonwealth had complied with the discovery request and had furnished appellee with all relevant information in its possession, except the court ordered the Commonwealth to provide defense counsel with all medical records it had in its possession. This order and finding was not challenged, and appellee does not now claim that the Commonwealth had in its possession any evidence or information gleaned from the CWS files. The testimony and argument presented at the *in camera* proceeding also supports the conclusion that the Commonwealth did not possess or control the CWS records.

In discussing the appellee's need for complete access to CWS's files in this case, the majority offers this metaphor: "When materials gathered become an arrow of inculpation, the person inculpated has a fundamental constitutional right to examine the provenance of the arrow and he who aims it." At 367. Since the "arrows of inculpation" were never in the Commonwealth's possession, nor used against him in the criminal proceedings, this metaphor must be viewed as a melodramatic *non sequitur*, entertaining, perhaps, but having no place in the "careful balance" that we must perform to resolve the tension between the appellee's Sixth Amendment rights *in this case* versus the victim's and state's interests in preserving the confidentiality of the CWS files.

Neither do we deal, in the instant case, with the "classic" Sixth Amendment right to confront or to compulsory process situations, *i.e.*, where a prosecution witness is una-

vailable and the prosecution seeks to introduce that witness' prior testimony or statements which will obviously not be subject to cross-examination, or where the state asserts some testimonial privilege or other interest to prevent a defendant from compelling a witness to appear as a defense witness. In these "classic" situations the defendant's Sixth Amendment rights are at their fullest extension—yet the rights are still not recognized as absolute and still must be balanced against competing state's and victim's interest. *See, e.g., Ohio v. Roberts, supra; Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Commonwealth v. Allen, supra.*

Having seen what we do not have in this case, let us examine the factual matrix which does present itself to us. Defense counsel sought access to all information contained in presumptively confidential records of a child protective service agency, CWS, which information was arguably relevant to the criminal proceeding.[2] In an effort to acquire this information, counsel subpoenaed CWS and filed a pretrial motion for sanctions requesting the court to order CWS to allow counsel access to its records. At the pretrial conference hearing on the motion for sanctions, defense counsel asserted three justifications for disclosure. The first was that counsel believed the files would contain a medical report by a doctor who had allegedly examined the victim in September, 1978. The testimony at this hearing and at trial indicates that a medical examination did take place in September, 1978, but it did not seem to be an examination for sexual abuse nor did it seem to be prompt-

**2.** While I find it unlikely that any of the information in the CWS file is relevant to issues raised in the trial, I accept the Superior Court's explanation as to its *arguable* relevance. That court stated "that in view of the fact that Jeannette was permitted to testify that the sexual abuse had been going on for about four years, statements made by her regarding abuse at the time of the CWS examination are at least potentially relevant."

ed by complaints of sexual abuse. Counsel made no argument as to how this medical examination might have been helpful to the defense. Nevertheless, the court examined the CWS files and confirmed a CWS representative's statement that there was no medical report of a 1978 examination in the file. N.T. at 5, 11.

The only other reasons advanced by defense counsel to support his request for disclosure was that there "could be defense witnesses disclosed by their records there. There could be matters in there that would be favorable to the defendant." N.T. at 10. Asked by the court what "kind of witnesses" might be found in the CWS file, defense counsel replied "I don't know. Could be lots of witnesses." N.T. at 10. Unimpressed with counsel's "could be-s," the court declined to further examine the CWS records and denied the motion for sanctions.

At trial, appellee's accuser—his thirteen year-old daughter whom he had raped and abused for several years—took the witness stand and testified as to appellee's deranged atrocities. The victim was subjected to vigorous and extensive cross-examination by defense counsel. A review of that cross-examination demonstrates that it was broad and unrestricted, except for certain instances when questioning strayed too far off course and the court, in its discretion, refused to allow some questions relating to clearly irrelevant matters, such as whether the victim "had boyfriends." See, e.g. N.T. Trial, November 7, 1979 at 81–82, 105–106. Counsel was permitted to cross-examine the victim at length about the incident of September, 1978. The victim testified that a lady from CWS visited her in September, 1978 and asked her some questions about anyone ever hitting her. A complaint had been made by an unidentified source. Appellee was present in another room of their residence when the CWS investigator questioned the victim. The victim further testified that she had been examined by a doctor in September, 1978, that her father, appellee, had taken her to the doctor's office, and that the victim had not made any

complaints to the doctor at that time. N.T. Trial, November 7, 1979 at 56–124.

It is difficult to imagine, under all of the circumstances, how appellee's rights to confront adverse witnesses and to compulsory process were in *any way* infringed by the court's refusal to compel disclosure of the CWS files. Given the undeniably compelling interests of the victim and the state in preserving the confidentiality of child protective service files as established by the Act, given the minimal and highly speculative benefits that appellee might have gained had he been given access to the CWS records, and given appellee's vague assertions to the court that there "could be" some matters favorable to appellee in those records, the careful balance of competing interests resoundingly tips in favor of non-disclosure and preservation of confidentiality.

None of the cases relied upon by appellee or by the majority require disclosure in this case. Only one case discussed by the majority even remotely resembles the factual circumstances of the instant case. In *Davis v. Alaska, supra,* the critical witness in the prosecution of Davis for burglary was Richard Green, a 17 year old who himself had a juvenile record of burglary. Green had testified for the prosecution that he had found the stolen cash safe near his property and reported it to the police. He also identified Davis as a man he had seen in the vicinity the night before he discovered the stolen property. Defense counsel sought to impeach the witness by introducing evidence of his juvenile burglary record and his probationary status, not to impeach his credibility generally but to cast the suspicion for the burglary of the safe to Green himself, and to indicate a motive for testifying against Davis. The trial court refused to allow defense counsel to introduce evidence of the witness' juvenile record or to question Green about that record, relying on Alaska statutory law prohibiting disclosure of juvenile records.

The United States Supreme Court conducted a careful balance in *Davis,* and concluded that, "[i]n this setting we

conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender." 415 U.S. at 319, 94 S.Ct. at 1112. The balance tipped in favor of disclosure in *Davis* because the defendant's need and request for the information sought was specific and would have been quite valuable to the defendant in helping to establish his defense, to demonstrate the witness' motivation for testifying and possibly lying, and to cast the witness as a possible suspect in the burglary. Refusing to permit defense counsel to cross-examine the witness as to his juvenile record for burglary completely foreclosed an important line of defense.

In the United States Supreme Court's recent per curiam decision in *Delaware v. Fensterer,* supra, the Court explained its decision in *Davis v. Alaska,* and delineated two broad categories of Confrontation Clause cases, stating:

This Court's Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination. The first category reflects the Court's longstanding recognition that the "literal right to 'confront' the witness at the time of trial ... forms the core of the values furthered by the Confrontation Clause." (citation omitted) ...

The second category of cases is exemplified by *Davis v. Alaska,* 415 U.S. 308, 318 [94 S.Ct. 1105, 1111, 39 L.Ed.2d 347] (1974), in which, although some cross-examination of a prosecution witness was allowed, the trial court did not permit defense counsel to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." As the Court stated in *Davis,* supra, at 315 [94 S.Ct. at 1110], "[c]onfrontation means more than being allowed to confront the witness physically." Consequently, in Davis, as in other cases involving trial court restrictions on the scope of cross-examination,

the Court has recognized that Confrontation Clause questions will arise because such restrictions may "effectively ... emasculate the right of cross-examination itself." *Smith v. Illinois,* 390 U.S. 129, 131 [88 S.Ct. 748, 750, 19 L.Ed.2d 956] (1968).

This case falls in neither category. It is outside the first category, because the State made no attempt to introduce an out-of-court statement by Agent Robillard for any purpose, let alone as hearsay. Therefore, the restrictions the Confrontation Clause places on "the range of admissible hearsay," ... are not called into play.

The second category is also inapplicable here, for the trial court did not limit the scope or nature of defense counsel's cross-examination in any way.

38 Cr.L. 4068.

As in *Delaware v. Fensterer,* this case falls into neither category. We have already seen that this case is not in the first category, where the state attempts to introduce out-of-court statements against a defendant. Nor does this case fall into the *Davis v. Alaska*—restrictive cross-examination category.

In stark contrast to the setting in *Davis* is the setting presented in this case. As opposed to the particularized need for disclosure demonstrated in *Davis,* appellee here has suggested that the CWS files *could have* some favorable matters "in there." Counsel did not know what witnesses might be "in there," but there "could be lots." Moreover, counsel in this case was not restricted in any way from pursuing the matter of the September, 1978 incident on cross-examination of the victim. That cross-examination elicited from the victim all of the information that counsel ever indicated *might be* found in the CWS files (*i.e.,* that she had been examined by a doctor in 1978 after a CWS worker had visited her upon an anonymous complaint, and that she had not made any complaints of abuse to the doctor). Under these circumstances, neither *Davis* nor any

other Sixth Amendment cases or considerations require defense access to the CWS files.

Under the circumstances, I would hold that the CWS files are confidential and that the court properly denied defense counsel access to the file. However, given this Court's careful accomodation of competing interests in *PAAR*, and giving appellee the benefit of the doubt that "there could be matters in there that would be favorable" encompassed a request for verbatim statements to which he would be entitled under *PAAR*, I would affirm the Superior Court's *limited* remand to the court of common pleas. As in *PAAR*, if the CWS records contain such verbatim statements, defense counsel should be allowed to review those statements *only*. If no such statements exist, defense counsel would not be entitled to review *any* information in the file.

I would also instruct the lower court to consider the applicability of the unqualified privilege for confidential communications to sexual assault counselors that was enacted by the legislature in 1981 in response to this Court's decision in *PAAR*. 42 Pa.C.S.A. § 5945.1. (*See* note 1 *supra*.). Obviously, a child protective service agency and its counselors will function as a "rape crisis center" and "sexual asault counselors", as those terms are defined by § 5945.1(a), where the child has been sexually abused. Accordingly, "confidential communications" made by the child to the counselor in such circumstances will be protected by this privilege which offers greater protection than the privilege provided in the Child Protective Services Law.

There is no question that appellee's June, 1979 rape of his daughter was a sexual assault. However, we cannot determine on the record before us whether the September, 1978 incident involved sexual assault, or whether the CWS files which appellee sought to inspect related to that incident or any incident(s) of sexual assault. The indications that do appear of record are to the contrary. I would instruct the lower court that, if the CWS files in fact pertain to incidents of sexual assault, then the unqualified privilege against

disclosure of confidential communications would apply if the terms and provisions of § 5945.1 are otherwise applicable.

Finally, I must emphasize my distress over the probable impact of the majority's decision. In allowing unfettered access to defense attorneys to fish through the files of child protective service agencies, counselors, guardians and parents will not be able to comfort the innocent and abused young victims with the security that the information they tell the agency personnel in confidence will not be scrutinized by their abusers. Nor will the confidentiality of the identity of those reporting suspected child abuse—a critical factor to the success of the Child Protective Services Law—be guaranteed; thus, the neighbor, relative, friend or acquaintance who suspects or witnesses child abuse might well decline to report such abuse if he or she knows that the abuser will be able to discover his or her identity so easily. Permitting review of these records on no more than the barest assertion that they "might be helpful" destroys the confidentiality of the records and thoroughly frustrates the stated legislative purposes "to encourage more complete reporting of suspected child abuse and to ... provid[e] rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve and stabilize family life wherever appropriate." 11 P.S. § 2202. I urge the legislature to act swiftly to shore up the confidentiality provisions that have been substantially discarded by the majority today.

HUTCHINSON, J., joins in this dissenting opinion.

HUTCHINSON, Justice, dissenting.

I join the dissenting opinion of Mr. Justice Larsen. However, on remand I would instruct the lower court to consider the application of the unqualified statutory privilege of sexual assault counselors for victim's communications to them, 42 Pa.C.S. § 5945.1, to these facts, as affected by appellee's right of confrontation under the Sixth Amendment of the United States Constitution.