# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Fetterman, as Administrator of the Estate of Mikel Fetterman, Deceased

        v.

Westmoreland County Children's Bureau; John Doe 1; John Doe 2; John Doe 3; John Doe 4; John Doe 5; John Doe 6; Teresa Fetterman, and Keith Lilly, Jr.

Appeal of: Westmoreland County Children's Bureau

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1201 C.D. 2023
ARGUED: October 8, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED: April 28, 2025**

Westmoreland County Children's Bureau (Bureau) appeals from an order of the Court of Common Pleas of Westmoreland County denying the Bureau's motion for protective order from a request for the production of records deemed privileged under Section 6339 of the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6339. In addition, we consider the application to quash the Bureau's appeal based on lack of jurisdiction filed by Administrator Michael Fetterman, the biological grandfather and the administrator of the estate of Mikel Fetterman

(Decedent).[1]  We affirm the trial court's order denying the Bureau's motion for protective order and deny Administrator's application to quash the Bureau's appeal.

This matter originated with the untimely and suspicious death of Decedent at age three.  Administrator filed a four-count complaint against the Bureau, six Bureau agents/employees, Teresa Fetterman (Mother), and Keith Lilly, Jr. (Boyfriend).[2]  In the wrongful death and survival action, Administrator averred that Decedent resided with Mother and Boyfriend, that Mother called the police to their home in March 2020 to report that Decedent was unconscious and unresponsive, that Decedent was taken to the hospital with a skull fracture and brain bleeding, and that he remained there until his death approximately a month later as the result of blunt force trauma to the head.  2/25/2022 Compl., ¶¶ 14-17. Notwithstanding the conflicting explanations that Mother and Boyfriend provided to the police officers for the skull fracture, the doctors discovered medical evidence indicating that Decedent had suffered long-term physical and sexual abuse prior to his hospital admission.  *Id*., ¶¶ 18-19.  The criminal charges brought against Boyfriend included homicide and involuntary deviate sexual intercourse and the charges against Mother included involuntary manslaughter, aggravated assault, and endangering the welfare of a child.  *Id*., ¶¶ 20-21.  As for the Bureau, Administrator alleged that it was partially responsible for Decedent's death because it received at least three or more reports alleging physical abuse, sexual abuse, and neglect but failed to intervene and protect him.  *Id.*, ¶¶ 22 and 31.

During discovery, Administrator served the Bureau with interrogatories and a request for production of documents seeking information regarding the

---

[1] In February 2024, this Court directed that the application be addressed with the merits.

[2] Mother and Boyfriend were precluded from filing briefs and participating in oral argument for failure to file briefs pursuant to this Court's May 3, 2024 order.  7/01/2024 Cmwlth. Ct. Order.

investigations that it allegedly conducted into allegations that Decedent was unsafe in his home. The Bureau filed a motion for protective order, arguing that the discovery requests violated the CPSL, which guarantees the confidentiality of the Bureau's files. In addition, the Bureau argued that the Child Abuse Prevention and Treatment Act (CAPTA),[3] a federal statute, requires the Bureau's compliance with the CPSL to obtain federal funding. Thereafter, Administrator obtained a signed authorization permitting the disclosure of the requested items from Mother. Following briefs and argument, the trial court denied the Bureau's motion. The Bureau appealed, arguing that the trial court erred in determining that a decedent child's administrator in a wrongful death and survival action was entitled to the discovery of records that otherwise would be confidential under the CPSL.

On appeal, the determinative issues are (1) whether the trial court's order denying the Bureau's motion for protective order is appealable as a collateral order; and (2) whether the trial court erred in determining that Administrator was entitled to receive the requested records because Decedent would have been entitled to receive them as the "subject of the report" were he alive.[4]

**I.**

We turn first to the threshold issue of whether the order is appealable as a collateral order under Pennsylvania Rule of Appellate Procedure 313, Pa.R.A.P. 313. Rule 313 provides:

---

[3] 42 U.S.C. §§ 5101-5108.

[4] The Bureau also raises an issue as to whether the trial court erred in granting Administrator access to confidential records based on an authorization executed by Mother purporting to allow the Bureau to release the records to Administrator. Based on our determination that Administrator's status was sufficient to entitle him to disclosure of the requested confidential information, we need not address any purported authority that Mother had to permit the Bureau to release records to Administrator. At all ends, Mother was not bound by any confidentiality restrictions.

(a) General Rule. An appeal may be taken as of right from a collateral order of a trial court or other government unit.

(b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

In general, discovery orders are not considered final orders and are "not appealable until there is a final judgment in the underlying action." *Smith v. Phila. Gas Workers*, 740 A.2d 1200, 1203 (Pa. Cmwlth. 1999). However, discovery orders involving purportedly privileged material are generally appealable because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot. *Rhodes v. USAA Casualty Ins. Co.*, 21 A.3d 1253, 1258 (Pa. Super. 2011). In other words, "[t]here is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Ben v. Schwartz*, 729 A.2d 547, 552 (Pa. 1999) [quoting *In Re: Ford Motor Co.*, 110 F.3d 954, 964 (3d Cir. 1997)].

Nonetheless, notwithstanding our Supreme Court's movement toward a category-wide exception to the finality rule for discovery orders involving privileged material, the Court has directed that an appealing party must establish each element of the collateral order doctrine's three-prong test and that a party's obligation to do so is not necessarily abrogated because a discovery order is appealed based upon a claim of privilege. *See In Re Estate of McAleer*, 248 A.3d 416, 425 n.20 (Pa. 2021); *Commonwealth v. Williams*, 86 A.3d 771, 780 (Pa. 2014). Pursuant to that test, we consider whether: "1) the order is separable from and collateral to the

4

underlying action; 2) the right involved is too important to be denied review; and 3) if review is postponed until final judgment, the claim will be lost." *MFW Wine Co., LLC v. Pa. Liquor Control Bd.*, 318 A.3d 100, 112 (Pa. 2024).

Turning to the first prong, we conclude that the order denying the motion for protective order is separable from and collateral to the underlying action. Specifically, we can address the discovery issue of whether the denial of the motion for protective order was correct without reviewing the main cause of action. As this Court determined in *Northumberland County Children and Youth Services v. Department of Public Welfare*, 2 A.3d 794, 798 (Pa. Cmwlth. 2010), the parties' challenge to a discovery order raising the issue of the mother's entitlement to receive documents in the agency's possession was separate from and collateral to the substantive issue of whether the mother abused the child. "The mere fact that the documents and information requested by [the mother] 'shed some light' on the child abuse allegations [did] not affect the existence of the separability element of a collateral order." *Id*. (citations omitted). Applying that analysis to the instant case, simply because the information sought would shed light on whether the Bureau, Mother, and Boyfriend are culpable in the wrongful death and survival lawsuit does not affect the separability prong.

As for the second prong, we conclude that the right involved is too important to be denied review. This prong is satisfied "if the interests that would potentially go unprotected without immediate appellate review of that order are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Commonwealth v. Watson*, 952 A.2d 541, 552 (Pa. 2008) (quoting *Ben*, 729 A.2d at 552). "It is not sufficient that the issue be important to the particular parties. Rather, it must involve rights deeply rooted in public policy

5

going beyond the particular litigation at hand." *Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999). Here, the discovery issue raised involves the competing interest of the Bureau in maintaining the confidentiality of the information in its possession and the Administrator as the personal representative of Decedent's estate who stands in the legal shoes of the deceased in relation to any cause of action or right that deceased person had when alive. Resolution of this issue affects not only the parties in this case but all other litigants who may be similarly situated.[5]

Turning to the third prong, we conclude that the claim will be lost if review is postponed until final judgment. We have noted that the distinction between whether a discovery order compels disclosure or denies it is vital. *MarkWest Liberty Midstream & Res., LLC v. Clean Air Council*, 71 A.3d 337, 342 (Pa. Cmwlth. 2013). "Discovery orders compelling the production of material are generally considered collateral orders, and thus appealable, because the disclosure of documents cannot be undone, and subsequent appellate review would be meaningless." *Id*. In the present case, if we defer review of the discovery order until the final decision, the parties' challenge to the order would be irreparably lost. Therefore, we conclude that the trial court's order denying the Bureau's motion for protective order is appealable as a collateral order and deny Administrator's application to quash the Bureau's appeal.

---

[5] The Pennsylvania Association for Justice filed an *amicus curiae* brief advocating that a decedent child's administrator in a wrongful death and survival action was entitled to the discovery of records from an agency related to an official investigation of alleged child abuse of a decedent given an administrator's statutory right to receive all confidential materials concerning a decedent that the decedent would have had a right to receive but for his death as a result of alleged abuse.

## II.

We turn next to whether the trial court erred in determining that Administrator was entitled to disclosure of the requested confidential information. Section 6339 of the CPSL, the confidentiality provision, provides:

> Except as otherwise provided in this subchapter or by the Pennsylvania Rules of Juvenile Court Procedure, reports made pursuant to this chapter, including, but not limited to, report summaries of child abuse and written reports made pursuant to section 6313(b) and (c) (relating to reporting procedure) as well as any other information obtained, reports written, or photographs or X-rays taken concerning alleged instances of child abuse in the possession of the department or a county agency shall be confidential.

23 Pa.C.S. § 6339.

Section 6340(a) of the CPSL, the exceptions provision, provides that the "[r]eports specified in section 6339 (relating to confidentiality of reports) shall only be made available to" specific categories of persons, agencies, and institutions. 23 Pa.C.S. § 6340(a). Pertinent here, Section 6340(b) provides: "Upon a written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c) [protecting the identity of those who reported suspected child abuse or cooperated in an investigation], contained in the Statewide database or in any report filed pursuant to section 6313 (relating to reporting procedure [and mandated reporters])." 23 Pa.C.S. § 6340(b). Section 6303 defines "subject of a report" as "[a]ny child, parent, guardian or other person responsible for the welfare of a child or any alleged or actual perpetrator in a report made to the department or a county agency under this chapter." 23 Pa.C.S. § 6303.

7

Here, the trial court concluded, and we agree, that Administrator falls under the definition of "subject of a report."[6] We disagree, however, with the trial court's holding that Administrator qualifies as a "subject of a report" because the CPSL's definition of that phrase includes any "other person responsible for the welfare of a child." 23 Pa.C.S. § 6303. Although Section 6303 does not define the "welfare of a child," the phrase is generally interpreted as the care of the physical needs of a living child. *See Commonwealth v. Brown*, 721 A.2d 1105 (Pa. Super. 1998) (boyfriend convicted of endangering the welfare of his girlfriend's child where he lived with the child, periodically babysat, changed diapers, and played with the child). Section 4304(a) of the Crimes Code defines the offense of endangering the welfare of a child as follows: "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of a child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a). Sadly, all that remains of Decedent in the present case is his estate. Consequently, Administrator is not a person responsible for the caretaking activities associated with ensuring the physical well-being, i.e., welfare, of a living child.

Nonetheless, we agree with the trial court's reasoning regarding Administrator's legal status vis-a-vis Decedent's estate, i.e., that Administrator was himself the "subject of a report" because Section 3373 of the Probate, Estates and

---

[6] Mother also falls under the definition of "subject of a report" because she is Decedent's parent and an alleged perpetrator. *Northumberland Cnty. Child. & Youth Servs.*, 2 A.3d at 800 (perpetrator of child abuse named in an indicated report meets definition of a "subject of a report"). Consequently, the trial court also concluded that she was authorized to permit the Bureau to disclose the requested files and records to Administrator. As we determined, however, we need not address Mother's authority to do so given Administrator's independent legal status entitling him to those items absent Mother's authorization. *See supra* note 4.

8

Fiduciaries Code provides that "[a]n action or proceeding to enforce any right or liability which survives a decedent may be brought by . . . his personal representative . . . as though the decedent were alive." 20 Pa.C.S. § 3373. In other words, Administrator as the personal representative would stand in the shoes of Decedent in this matter. *In re Kilpatrick's Est.*, 84 A.2d 339, 341 (Pa. 1951) ("only the personal representative of a deceased party in interest stands in the shoes of such decedent"). Consequently, Administrator has a right to receive any confidential materials that Decedent would have had a right to receive but for his death.

Finally, the trial court explained that the stated purpose of the CPSL not only would be thwarted by withholding documentation from Administrator but would be in contravention of the CPSL's purpose. The purpose of the CPSL is, *inter alia*, to protect abused children by encouraging more complete reporting of suspected abuse without fear that information provided will be made public. 23 Pa.C.S. § 6302(b). As the Superior Court summarized, the CPSL

> was enacted to identify and protect children suffering from abuse and to provide rehabilitative services to such children and their families. In addition to providing procedures concerning the investigation and reporting of abuse cases, the [CPSL] has a section providing for the confidentiality of such records. . . . The confidentiality provision provides that reports made pursuant to the [CPSL] shall be confidential, but shall be made available to certain enumerated classes of officials and groups. . . .
>
> The legislative purpose herein was clearly to create an agency, not only to investigate allegations of child abuse, but to provide care, shelter, and erase where possible the cruel stains upon their innocence. To accomplish this the statute provides for confidentiality and, as well, for exceptions to the confidentiality imposed; all are avenues to help.

9

*V.B.T. v. Fam. Servs. of W. Pa.*, 705 A.2d 1325, 1336 (Pa. Super. 1998), *aff'd*, 728 A.2d 953 (Pa. 1999) [quoting *Commonwealth v. Ritchie*, 502 A.2d 148, 151 (Pa. 1985), *aff'd in part and rev'd in part*, *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987)].

Here, the information that Administrator seeks is intended to facilitate holding the alleged abusers and the Bureau culpable for the tragic outcome of the abuse in the context of a wrongful death and survival action. As Administrator stated regarding the CPSL's purpose in relation to Decedent:

> Ruling for [the Bureau] would create an unworkable paradigm where a social service agency can avoid liability if [its] negligence kills [a child], instead of only grievously injuring [him]. There is no dispute that if [Decedent] were alive, he would be able to obtain the records. Allowing [the Bureau] to avoid liability by burying its records explicitly because its negligence led to the death of a child is fundamentally unjust and would be contrary to the legislature's intent in passing the CPSL. . . . Preventing disclosure in this case would directly contravene the CPSL's stated purpose, as [the Bureau] would be able to evade potential liability to [Decedent] by hiding behind the very statutes that were meant to protect him.

Administrator's Br. at 11.[7]

Indeed, the Bureau should not be able to rely upon the confidentiality provisions meant to protect the minor child and his family and use those provisions for purposes of protecting itself against potential liability. The ability to hold

---

[7] Reiterating that Decedent would have had a statutory right to the confidential information had he lived, the Pennsylvania Association for Justice asserted that "the child abuse that three-year-old [Decedent] was subjected to succeeded in killing him . . . [and t]his difference should not be accepted as a legitimate basis for legally erasing [his] statutory right to receive the confidential information at issue in this case." Pa. Ass'n for Justice's *Amicus Curiae* Br. at 13-14. The Association maintains, and we agree, that interpreting the CPSL in such a manner would render an absurd result, especially considering the legislature's purpose in enacting the legislation.

accountable the agency charged with the protection of children can only enhance its incentive to protect them with care and diligence. We thus conclude that Administrator was entitled to receive the requested records, not only because Decedent would have been entitled to receive them as the "subject of the report" were he alive but also because disclosure would serve the purposes of the CPSL.

## III.

Accordingly, we deny Administrator's application to quash and affirm the trial court's order denying the Bureau's motion for protective order.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Fetterman, as Administrator of : <br>
the Estate of Mikel Fetterman, : <br>
Deceased : <br>
  : <br>
  : <br>
       v. : No. 1201 C.D. 2023 <br>
  : <br>
Westmoreland County Children's : <br>
Bureau; John Doe 1; John Doe 2; : <br>
John Doe 3; John Doe 4; John Doe 5; : <br>
John Doe 6; Teresa Fetterman, and : <br>
Keith Lilly, Jr. : <br>
  : <br>
Appeal of: Westmoreland County : <br>
Children's Bureau : <br>

# **O R D E R**

AND NOW, this 28th day of April, 2025, the order of the Court of Common Pleas of Westmoreland County denying the Westmoreland County Children's Bureau's motion for protective order from a request for the production of records is hereby AFFIRMED.

Administrator Michael Fetterman's application to quash the appeal of the Bureau is hereby DENIED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita