511 A.2d 221

**COMMONWEALTH of Pennsylvania**

v.

**Dale SAMUELS, Appellant.**

Superior Court of Pennsylvania.

Argued April 3, 1985.

Decided April 22, 1986.

Reargument Denied June 26, 1986.

Petition for Allowance of Appeal Granted Nov. 21, 1986.

130

132

134

Cynthia M. Weaver, Solicitor, Newtown, for appellant.

Gail Fairman, Assistant District Attorney, Doylestown, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for statutory rape, 18 Pa.C.S.A. § 3122, indecent assault, *id.* § 3126, indecent exposure, *id.* § 3127, and corruption of minors, *id.* § 6301. Appellant contends that (1) the lower court erred in limiting his expert's testimony at trial; (2) the statute granting sexual assault counselors an absolute privilege "not to be examined as a witness in any civil or criminal proceeding" concerning confidential communications made to them by sexual assault victims, 42 Pa.C.S.A. § 5945.1, is unconstitutional under various provisions of the United States and Pennsylvania Constitutions; (3) his trial counsel rendered ineffective assistance of counsel (seven allegations); (4) the sentencing guidelines, *see* 204 Pa.Code §§ 303.1–303.9, *reprinted following* 42 Pa.C.S.A. § 9721, are unconstitutional under various provisions of our state constitution; and (5) his prior misdemeanor convictions not involving the use of a deadly weapon were improperly counted in determining his prior record score under the sentencing guidelines because the Pennsylvania Commission on Sentencing had no authority to so allow their use. For the following reasons, we vacate the judgment of sentence and remand this case for resentencing.

On June 17, 1983, appellant was arrested in connection with the May 29, 1983 sexual assault of an eleven-year-old girl. He was charged with rape, statutory rape, involuntary deviate sexual intercourse, indecent assault, indecent

exposure, corruption of minors, and simple assault. Following a July 28, 1983 preliminary hearing, appellant was held for court on each of the charges and arraigned on September 7, 1983. At a November 11, 1983 hearing on appellant's pre-trial motions, the Commonwealth withdrew the charge of involuntary deviate sexual intercourse. N.T. November 11, 1983 at 2.

Appellant was tried before a jury on November 18 and 21, 1983. Essentially two versions of what transpired in the early morning hours of May 29 were presented at trial.[1] Appellant lived with the victim's stepsister and their daughter. About 9:30 on the evening of May 28, appellant and his girlfriend picked up the victim at her home; the couple then drove her to their home to babysit their daughter while they went out to a bar. At this point, the versions diverge.

According to the Commonwealth, the couple returned after midnight, and then appellant proceeded to drive the victim home in her stepsister's automobile. At some point on the way there, appellant kissed the victim and then drove to an area where he committed the acts that form the basis of the charges filed against him. The victim testified that she smelled alcohol on appellant's breath, but did not know whether he was drunk. Notably, during the victim's struggle with appellant in the backseat of the car, she put her foot through the roof of the convertible. *See* N.T. November 21, 1983 at 10 (testimony of police officer Howard Bennett); *id.* November 18, 1983 at 35 (victim's testimony that she "tried to kick [her] way out of it"). Afterwards, appellant drove the victim home. Out of fear, she did not tell her father (who was awake when she came home) or her mother what had happened. In the morning she did, however, tell her fifteen-year-old friend and neighbor. Then, after a conversation with "two girlfriends [who] said if you don't tell them, [we] will," *id.* at 39, the victim told her mother about the attack on the following Tuesday (May 31)

1. In its brief to this Court, the Commonwealth adopts appellant's statement of the facts wherein he sets forth both versions. We note that appellant does not challenge the sufficiency of the evidence to sustain the guilty verdicts.

or Wednesday (June 1). Her mother took her, on June 2, to see Dr. Valerie Bossard, a physician who specializes in gynecology and obstetrics. Dr. Bossard testified that the victim had "a small area of ecchymosis [redness] about two by two centimeters, on the left labium minora" and a hymen that was not intact, factors suggesting that sexual intercourse had occurred. *Id.* at 79–80.[2]

Appellant testified in his own defense. He and the victim's stepsister stayed at the bar until "last call," 2:00 a.m. He had two beers there. N.T. November 21, 1983 at 49–50. After leaving the bar, appellant's girlfriend "noticed the roof was cut and [he] checked out the car and noticed it." *Id.* at 47; *see also id.* at 17 (testimony of the victim's stepsister).[3] The couple drove her brother, who had gone with them, to his house, and then returned to their home. Next appellant drove the victim home and returned at about 3:15 a.m. His girlfriend did not accompany him because she was not feeling well and, because her car was low on gas, she did not want to get stranded outside so early in the morning. The following Monday, Memorial Day, the victim spoke to her stepsister and appellant at a cookout and was paid for babysitting. On Thursday (June 2), the victim's brother accused appellant of raping his sister, and appellant testified that he was "really shocked" and told him "that I did not do it." *Id.* at 46.

On November 21, 1983, the jury found appellant guilty of statutory rape, indecent assault, indecent exposure, and corruption of minors.[4] Timely post-verdict motions were

2. On cross-examination, Dr. Bossard testified that the redness could have been caused by the victim's falling or sitting hard on a cement object and that it was possible that the victim's hymen was not intact a week before her examination. N.T. November 21, 1983 at 81–82.

3. Appellant testified that something was stolen from the car, *id.* at 47, but he did not report the theft or the damage to the car roof to the police, *id.* at 50.

4. Because the jury was deadlocked on the rape charge, the court below declared a mistrial as to that charge. *Id.* at 104. The jury was not charged on the elements of simple assault; we assume—the record is not clear at this point—that the Commonwealth dropped that charge.

filed, and because appellant alleged that he received ineffective assistance of counsel, new (present) counsel was appointed to represent him. A hearing on the ineffectiveness claims was held on March 22, 1984. All of appellant's post-trial motions were denied on August 3, 1984, and, on August 29, he was ordered to pay the costs of prosecution and was sentenced to a term of thirty-eight-months-to-fifteen-years imprisonment on "Criminal Action 3261 of '83." [5] Appellant thereupon filed a motion to modify or reconsider sentence, and, on September 7, 1984, the lower court lowered the maximum sentence to ten years imprisonment.[6] This appeal followed.

## I

Appellant first contends that the lower court erred in prohibiting his expert witness, James Rearick, from stating his opinion as to what kind of object caused the hole in the roof of the convertible. This claim is meritless.

■ The qualification of an expert witness is a matter within the discretion of the trial court. *Kravinsky v. Glover,* 263 Pa.Superior Ct. 8, 20, 396 A.2d 1349, 1355 (1979). " 'If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he or she is qualified as an expert.' " *Id.* (quoting *Ragan v. Steen,* 229 Pa.Superior Ct. 515, 522, 331 A.2d 724, 728 (1974)). Moreover, "[i]t is not necessary that the witness possess all the knowledge in his special field of activity." *Erschen v. Pennsylvania Independent Oil Co.,* 259 Pa.Superior Ct. 474, 477, 393 A.2d 924, 926 (1978).

■ Here, we find no "clear case of error" requiring reversal of the trial court's ruling. *See Pratt v. Stein,* 298 Pa.Superior Ct. 92, 152, 444 A.2d 674, 706 (1982). Appel-

---

**5.** The trial judge did not impose an individual sentence on each of the four charges of which appellant was found guilty. We discuss this in part IV of this opinion.

**6.** Statutory rape is a felony of the second degree, 18 Pa.C.S.A. § 3122, that carries a maximum term of imprisonment of ten years, *id.* § 1103(2). The other crimes of which appellant was found guilty are of a lesser degree.

lant's witness testified that he had been doing upholstery work on cars "off and on [for] about 13 years." N.T. November 21, 1983 at 60. Rearick stated that he patched torn roof tops once every two weeks. *Id.* at 61. We believe that, given the foregoing, the court correctly concluded that Rearick was not qualified to give his opinion as to the cause of the cut. He did not testify that he had any specialized knowledge to determine what might cause a tear. We note, also, that the court did allow him to describe the nature of the cut, *id.* at 63–64, and from that testimony the jury could decide for itself what caused the tear. *See Ryan v. Furey,* 225 Pa.Superior Ct. 294, 298, 303 A.2d 221, 224 (1973) ("expert witness should not be permitted to state an inference or judgment as to the ultimate facts to be determined by the jury if the evidentiary facts can be fully developed so that [it] can reasonably estimate their bearing on the issues").

▆ In any event, we believe that the defense conveyed its point to the jury that someone had broken into the car:

[Defense Counsel]: When you examined that roof, what type of cut was it?

[Rearick]: It was either done by a knife or razor blade.

[The Prosecutor]: Objection.

THE COURT: Sustained.

\* \* \* \* \* \*

[Defense Counsel]: By "straight," how do you mean?

[Rearick]: Somebody took something and just cut it. Made a straight run out of it.

[The Prosecutor]: Objection.

THE COURT: Sustained. The jury will disregard that.

[Defense Counsel]: Do you have an opinion as to whether that cut was done by a foot or a straight cutting object?

[The Prosecutor]: Objection.

THE COURT: Sustained.

N.T. November 21, 1983 at 61–62. Furthermore, the Commonwealth's and the defense's versions of what caused the cut were not necessarily mutually exclusive: the victim

could have more easily put her foot through an already torn car roof than an untorn one. Accordingly, we can find no merit in this contention and absolutely no prejudice to appellant by the court's limitation of Rearick's testimony.

## II

Appellant next contends that the statute granting "sexual assault counselors" an absolute privilege "not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim" concerning "confidential communications" made by sexual assault victims, 42 Pa.C.S.A. § 5945.1,[7] is unconstitutional because (1) it denies

7. The statute in full is as follows:

§ 5945.1 Confidential communications to sexual assault counselors

(a) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

*"Rape crisis center."* Any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counseling.

*"Sexual assault counselor."* A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of training and is under the control of a direct services supervisor of a rape crisis center, whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.

*"Victim."* A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused by a sexual assault.

*"Confidential communication."* Information transmitted between a victim of sexual assault and a sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than those who are present to further the interests of the victim in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or an accomplishment of the purposes for which the sexual assault counselor is consulted. The term includes all information received by the sexual assault counselor in the course of that relationship.

(b) Privilege.—A sexual assault counselor has a privilege not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim being counseled by the counselor as to any confidential communication made by the victim to the counselor or as to any advice, report or working paper given or made in the course of the consultation.

him an opportunity to present evidence in his own behalf, a violation of due process, U.S.Const. amend. XIV; Pa. Const. art. I, § 9; (2) it denies him his right to compulsory process for obtaining witnesses in his favor, U.S. Const. amend. VI; Pa. Const. art. I, § 9; (3) it fails to define the nature and scope of communications protected from disclosure at trial, a violation of due process; and (4) it denies him the equal protection of the law, U.S. Const. amend. XIV; Pa. Const. art. III, § 32, because defendants charged with sex offenses are treated differently from other defendants not so charged with regard to obtaining prior statements of a witness. Appellant also contends that the trial court's post-trial review of the Bucks County Women Organized Against Rape (WOAR) files prejudiced him because, had he known that the files contained no relevant statements made by the victim, "he could have cross-examined [her] concerning the absence of any statements inculpating [him]." Brief for Appellant at 22. Lastly, he requests this Court, if it should find no error in the procedure utilized by the court below, to rule on the constitutional question thereby presented, the limitation of his ability to cross-examine the complainant, "because in this guise [the question] is capable of repetition yet evading review." *Id.* For the following reasons, we decline to rule on the constitutionality of § 5945.1 because, even assuming its applicability to the instant case, we find that appellant has not been prejudicially affected by its operation in this case. We also conclude that appellant was not prejudiced by the lower court's post-trial review of the WOAR files.

Our Legislature enacted the sexual assault counselors' privilege statute in response to our Supreme Court's decision in *In re Pittsburgh Action Against Rape, (PAAR)*, 494 Pa. 15, 428 A.2d 126 (1981), *see Commonwealth Ritchie*, 509 Pa. 357, 359 n. 1, 502 A.2d 148, 149 n. 1 (1985) (LARSEN, J., dissenting); Note, *Pennsylvania Establishes New Privilege for Communications Made to a Rape Crisis Center Counselor—[PAAR]*, 55 Temp.L.Q. 1124, 1125 (1982), and the response of rape crisis centers to that

decision, *id.* In *PAAR,* appellant, director of PAAR, a rape crisis center, "ask[ed] [our Supreme] Court to expand the common law of this Commonwealth to create an absolute privilege for all communications between PAAR personnel and persons seeking PAAR's assistance." *PAAR, supra,* 494 Pa. at 19, 428 A.2d at 127. The Court refused. Instead, the Court, though recognizing "the undoubtable public interest in helping victims of rape to cope with inevitable disruption of emotional stability caused by the physical assaults they suffer" and "in encouraging victims of violent crime to come forward," *id.,* 494 Pa. at 24, 428 A.2d at 130, found that "[i]t would be unfair to erect a privilege that would deny [an] accused the opportunity at least to ascertain what the complainant previously has said," *id.,* 494 Pa. at 27, 428 A.2d at 132. Accordingly, the Court held

that upon defense request a court should authorize defense inspection *of only those statements of the complainant contained in the [center's] file which bear on the facts of the alleged offense.* The court, however, must not permit defense inspection of statements of the complainant having no bearing on the facts of the alleged offense and relating instead only to the counselling services [that the rape crisis center] provides. The trial court shall not permit defense review of any other aspect of the file.

*Id.,* 494 Pa. at 19, 428 A.2d at 127–28 (emphasis added).[8] The trial court's inquiry is to be conducted *in camera* with an eye to determining what in the file "are indeed 'statements.'" *Id.,* 494 Pa. at 28, 428 A.2d at 132. Furthermore, the Court cautioned the defense against improperly disclosing or using any statements made available to it. *Id.,* 494 Pa. at 29, 428 A.2d at 133.

8. Justice Larsen, dissenting would have recognized an absolute privilege for confidential communications between rape victims and rape crisis center counselors. *In re Pittsburgh Action Against Rape,* 494 Pa. 15, 34, 428 A.2d 126, 135 (LARSEN, J., dissenting). We note his "appeal to our Legislature to take cognizance of the rape victim's plight and to act promptly and compassionately in legislatively enacting a rape victim/rape crisis counselor testimonial privilege." *Id.,* 494 Pa. at 62–63, 428 A.2d at 150.

The *PAAR* procedure was modified in *Commonwealth v. Ritchie, supra,* over the vigorous dissent of Justice Larsen, joined by Justice Hutchinson. At issue in *Ritchie* was the constitutionality of § 2215 of the Child Protective Services Law, 11 P.S. §§ 2201–2224. Under § 2215,

> reports made pursuant to [the] act including but not limited to report summaries of child abuse ... and written reports ... as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of the department, a county children and youth social service agency or a child protective service shall be confidential and shall only be made available to: [eleven enumerated categories of persons and institutions].

11 P.S. § 2215(a).[9] The Court noted that, with all of its exceptions, this confidentiality provision differs from others enacted by our Legislature, such as the statute at issue here, § 5945.1.

In *Ritchie,* the defense did not ask solely for statements made by the complainant that bore on the facts of the alleged offenses (a father's sexual assaults on his thirteen-year-old daughter); "[the Court was] asked for a review and inspection by counsel of all materials in the possession of [the Child Welfare Services (CWS)], that their relevancy might be determined and their uses in testing credibility ascertained." *Commonwealth v. Ritchie, supra,* 509 Pa. at 362, 502 A.2d at 150. The Court, finding *PAAR* "useful," found as follows:

> In [*PAAR*], we gave what we were asked, to wit, inspection of communications between the victim and personnel of PAAR. Now we are asked for the right to inspect the entire file. The rationale for such a request is the same rationale underlying the right granted in [*PAAR*], to inspect prior statements of a victim or witness. *In short, as with prior statements, the eye of an advocate may*

9. When *Ritchie* was decided, there were only five such categories of persons and institutions to whom the reports were to be made available.

*see connection and relevancy in any material gathered from the victim, other witnesses, or circumstances developed by the investigation of a child.* "The search for truth" and the quest for "every man's evidence" so plainly the basis of the Sixth Amendment, and so aptly applied in [*PAAR*], are as applicable to any material as to prior statements.

*Id.*, 509 Pa. at 367–368, 502 A.2d at 153. (footnote omitted). Accordingly, even though the trial court found that the CWS files contained nothing of any benefit to the defendant, the Court remanded the case so that the defendant, through his counsel, could have access to them and "then be permitted to argue to the trial court what use, if any, could have been made of the files in cross-examining the complainant or in presenting other evidence." *Id.*, 509 Pa. at 368, 502 A.2d at 153. The Commonwealth could argue that any error was harmless. *Id.*, 509 Pa. at 368, 502 A.2d at 153. The Court did not declare § 2215 unconstitutional, however, because the Legislature excepted "court[s] of competent jurisdiction pursuant to a court order," 11 P.S. § 2215(a)(5), from the confidentiality provision, thus "clearly recogniz[ing] that material in [a] child's file cannot be denied them." *Commonwealth v. Ritchie, supra*, 509 Pa. at 367, 502 A.2d at 153.

We must now assess § 5945.1 [10] as it applies to the facts of the instant case and in light of our Supreme Court's

10. Our research has disclosed only one other state, California, that has a sexual assault victim-counselor privilege. *See* Cal.Evid.Code §§ 1035–1036.2 (West Supp.1986). Unlike this Commonwealth's privilege, however, the California privilege is not an absolute one. Notably, the statute provides a detailed procedure for a court's disclosure of privileged material as defined by the statute:

As used in this article, "confidential communication between the sexual assault counselor and the victim" means information transmitted between the victim and the sexual assault counselor in the course of their relationship and in confidence by a means which, so far as the victim is aware, discloses the information to no third persons other than those who are present to further the interests of the victim in the consultation or those to whom disclosures are reasonably necessary for the transmission of the information or an accomplishment of the purposes for which the sexual assault counselor is consulted. The term includes all information regarding the

decisions in *PAAR* and *Ritchie*. In so doing, we take note of the well-established proposition that a court is not to rule

> facts and circumstances involving the alleged sexual assault and also includes all information regarding the victim's prior or subsequent sexual conduct, and opinions regarding the victim's sexual conduct or reputation in sexual matters.
>
> The court may compel disclosure of information received by the sexual assault counselor which constitutes relevant evidence of the facts and circumstances involving an alleged sexual assault about which the victim is complaining and which is the subject of a criminal proceeding if the court determines that the probative value outweighs the effect on the victim, the treatment relationship, and the treatment services if disclosure is compelled. The court may also compel disclosure in proceedings related to child abuse if the court determines the probative value outweighs the effect on the victim, the treatment relationship, and the treatment services if disclosure is compelled.
>
> When a court is ruling on a claim of privilege under this article, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged and must not be disclosed, neither he or she nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers.
>
> If the court determines certain information shall be disclosed, the court shall so order and inform the defendant. If the court finds there is a reasonable likelihood that particular information is subject to disclosure pursuant to the balancing test provided in this section, the following procedure shall be followed:
>
> (1) The court shall inform the defendant of the nature of the information which may be subject to disclosure.
>
> (2) The court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the sexual assault counselor regarding the information which the court has determined may be subject to disclosure.
>
> (3) At the conclusion of the hearing, the court shall rule which items of information, if any, shall be disclosed. The court may make an order stating what evidence may be introduced by the defendant and the nature of questions to be permitted. The defendant may then offer evidence pursuant to the order of the court. Admission of evidence concerning the sexual conduct of the complaining witness is subject to Sections 352, 782, and 1103.

Cal. Evidence Code § 1035.4. Furthermore, the California statute sets forth who holds the privilege, *id.* § 1035.6, whom the sexual assault victim can prevent from disclosing confidential communications, *id.* §. 1035.8, and which "sexual assaults" are included within the terms of the statute, *id.* § 1036.2.

on the constitutionality of a statute unless it is absolutely necessary to do so in order to decide the issue before it. *Millcreek Township School District v. Star Theatre, Inc.*, 172 Pa.Superior Ct. 291, 294, 94 A.2d 53, 54 (1953). Furthermore, one who is not prejudicially affected by the statute in the case under review is not entitled to be heard on the question of its alleged unconstitutionality. *Commonwealth v. Bonadio*, 490 Pa. 91, 94 n. 2, 415 A.2d 47, 49 n. 2 (1980); *Commonwealth v. Bottchenbaugh*, 306 Pa.Superior Ct. 406, 409–10, 452 A.2d 789, 791 (1982).

We must first determine here the WOAR materials that *we* are being asked for, and for what purpose we are being asked to allow their disclosure. With regard to these questions, the record is sparse indeed. At the pre-trial motions hearing, the following exchange occurred:

[Defense Counsel]: ... I have two other Motions I want to present to the Court.

One is I have typed up and have not filed a Motion to—challenging the Judicial Code, constitutionality of that section which deals with the WOAR records.

I have subpoenaed those records, received a letter from Mr. Adamson indicating that they would not respond to the subpoena.

Subpoena was served and the Motion is typed. If it is necessary that I present evidence, I will do so, but I thought perhaps—

THE COURT: I think everybody would probably agree that you in fact attempted to get the records but were denied access to them under the appropriate sections of the Judicial Code.

Would you agree to that?

[The Prosecutor]: Yes, Your Honor.

THE COURT: You have preserved that issue.

N.T., Pre-trial Motions Hearing, November 11, 1983 at 4. This is the only reference that we could find in the record made either pre-trial or at trial. Unlike the pre-trial conference held in *Ritchie*, defense counsel asserted no justification in seeking to compel disclosure of the WOAR records.

*See Commonwealth v. Ritchie, supra,* 509 Pa. at 359, 502 A.2d at 149. (CWS records sought in order to gain information that could impeach or discredit the complainant or that could reveal potential witnesses; defense also sought information pertaining to a medical examination of the victim); *cf. PAAR, supra,* 494 Pa. at 21–23, 428 A.2d at 129 (complainant testified at trial that she spoke with PAAR personnel; defendant sought production of PAAR records containing communications between them for the purpose of impeaching the complainant).

In his motion in arrest of judgment and for a new trial, defense counsel argued that the court erred in failing to rule § 5945.1 unconstitutional pre-trial. In her brief in support of that motion, new (present) counsel argued that the court erred in failing to grant appellant's request to compel the testimony [11] and production of evidence from WOAR. For the first time, counsel offered a reason in support of disclosure: that the information may have undermined the victim's testimony about the alleged attack upon her by appellant, that is, that it may have cast doubt on her identification of him. Brief for Appellant in Support of Post-Verdict Motions at 9–10. The lower court did not address appellant's constitutional challenges to § 5945.1, however, because, following *PAAR* and this Court's decision in *Ritchie,*[12] it "reviewed the WOAR records *in camera* and found that *no statements whatsoever were made by the victim."* Lower Court Opinion at 4–5 (emphasis added).[13]

11. As is evident from the above-cited notes of testimony from the pre-trial hearing and from the trial itself, defense counsel never sought to compel the *testimony* of anyone from WOAR.

12. 324 Pa.Superior Ct. 557, 472 A.2d 220 (1984). Finding the same competing interests involved as in *PAAR,* we adopted the *PAAR* procedure outlined above. *PAAR* was, as noted above, subsequently modified by our Supreme Court.

13. The lower court sealed the file in order to protect its confidentiality and preserve it for appeal. *We have reviewed the file and agree with the court's finding that it contains no statements whatsoever by the victim.* We then resealed it. Note that in both *Ritchie, see Commonwealth v. Ritchie,* 324 Pa.Superior Ct. at 567, 472 A.2d at 226, and *PAAR, see PAAR, supra,* 494 Pa. at 30, 428 A.2d at 133, our appellate

■ Nor will we reach the issue of the constitutionality of § 5945.1. First, we question whether the statute is applicable here. It grants sexual assault counselors a privilege "not to be examined as a witness in any civil or criminal proceeding without the prior written consent of the victim being counseled...." 42 Pa.C.S.A. § 5945.1(b). Defense counsel never sought to examine any WOAR counselor as a witness. To the extent that the statute is inapplicable, then, this case is governed solely by the principles announced in *PAAR* and *Ritchie,* and we need not address the constitutionality of § 5945.1.

It is, however, of no consequence whether the statute applies here,[14] because it is evident that appellant suffered no prejudice by its operation, real or imagined, or by the procedure employed by the court below. We note that it is only new counsel, not appellant's trial counsel, who offers any justification for disclosure of the file.[15] The justification offered below hardly bears discussion: identification was not an issue in this case (appellant did not deny driving the victim home); credibility of the witnesses was.

On appeal, counsel adds a rather belated reason. Had trial counsel known that the victim made no statements, she argues, he could have cross-examined her as to the absence of any statements made to WOAR personnel inculpating appellant. Even assuming that this claim is not waived, it is utterly frivolous. The victim reported the attack to her girlfriends, her mother, and the police. Furthermore, when the victim was interviewed by Officer Howard Bennett on June 2, 1983, she was accompanied by "Kathy," a WOAR representative. The Commonwealth forwarded the interview form to the defense pursuant to a discovery request;

courts did not have the files in question before them. Consequently, our Supreme Court could not consider the defendants' claims to disclosure in those cases in light of the actual records.

14. Of course appellant could, but does not, argue that, if the files contained statements that would be relevant to his defense, he could have sought to introduce them at trial through WOAR personnel.

15. At the ineffectiveness hearing, trial counsel testified that he subpoenaed the records before trial, but again offered no reason as to why he sought their disclosure. N.T. March 22, 1984 at 23–24.

thus, the defense knew that WOAR was well aware of whom the victim was inculpating. Accordingly, we will not waste more time and judicial resources by remanding this case, as was done in *Ritchie*, for a fishing expedition through the WOAR files that has no chance of producing anything even remotely helpful to the defense.

### III

Appellant next contends that his trial counsel was ineffective in failing to (1) investigate whether the victim's father's alleged sexual advances towards his daughters precipitated her accusations against appellant and provided medical corroboration for them, (2) preserve objections to testimony concerning out-of-court statements made by the victim, (3) call at trial a medical expert to contradict the testimony of the Commonwealth's expert medical witness, (4) request a jury charge on the victim's delay in reporting the alleged assault, (5) timely object to the prosecutor's expressions of personal belief in her closing argument and to preserve that issue for appeal, (6) present evidence of the victim's family's animosity towards him, and (7) present character witnesses on his behalf. These claims are meritless.

■ In reviewing claims of ineffective assistance of counsel,

"We remain guided by the standards first articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605–06, 235 A.2d 349, 352–53 (1967):

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests.

The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

> Moreover, counsel will not be deemed ineffective for failing to raise baseless or frivolous issues. *Commonwealth v. Arthur*, 488 Pa. 262, 265, 412 A.2d 498 (1980). It is only when the claim which has been foregone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687, 696 (1977)."

Additionally, because counsel's stewardship of the trial is presumptively effective, the burden of establishing counsel's ineffectiveness rests upon the defendant. *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233 (1981); *Commonwealth ex rel. Washington v. Maroney, supra* at 427 Pa. 608, 235 A.2d 349.

*Commonwealth v. McNeil*, 506 Pa. 607, 614–15, 487 A.2d 802, 805–06 (1985) (quoting *Commonwealth v. Anderson*, 501 Pa. 275, 286, 461 A.2d 208, 213 (1983)). To this two-pronged "performance component" for analyzing a claim of ineffective assistance of counsel, this Court has added a "prejudice component" as follows: "[A]fter proving that his [or her] counsel was ineffective, the defendant must go on to establish that counsel's ineffectiveness so prejudiced his case that he was deprived of a fair trial." *Commonwealth v. Pierce*, 345 Pa.Superior Ct. 324, 329, 498 A.2d 423, 426 (1985) (*en banc*). With these standards in mind, we turn to appellant's allegations of trial counsel's ineffectiveness.

■ Appellant first alleges that trial counsel should have investigated whether the victim's father could have assaulted her. This claim has no arguable merit. At the post-trial ineffectiveness hearing, the victim's stepsister testified that she discussed her stepfather's abuse of her with appellant's trial counsel. N.T. March 22, 1984 at 37. Trial counsel testified that the stepsister told him that she had been assaulted "some ten years ago" and that he had also discovered that another sister had been assaulted "a while ago" by the stepfather, but he had no evidence whatsoever of any attack on the victim. *Id.* at 12–13, 28–29. Therefore, as the lower court correctly found, counsel *did* investi-

gate the possibility of an alternative explanation for the assault.

■ Appellant also argues that counsel should have attempted to introduce the evidence of the stepfather's attacks on his daughters. Any such attempt would have been fruitless. Considering the facts of this case, we fail to understand the relevancy of evidence that a person other than appellant assaulted a person other than the victim. *Cf. Commonwealth v. Black*, 337 Pa.Superior Ct. 548, 487 A.2d 396 (1985) (Rape Shield Law, 18 Pa.C.S.A. § 3104, could not be used to prevent the defendant from introducing evidence of the *victim's* prior sexual history with another person to show her bias against the defendant). Appellant's suggestion that those attacks, one taking place over ten years ago, somehow precipitated the victim's accusations against appellant is nothing short of fanciful.

■ Appellant next alleges that trial counsel failed to object to testimony concerning the victim's out-of-court statements. Both the victim and her friend testified as to the victim's statements made to her friends, mother, and brother, accusing appellant of raping her. *See* N.T. November 18, 1983 at 37–39, 91. As counsel testified, however, he had a strategy in not objecting to the admission of the statements.

> [M]y theory of the case was [that the victim] had never told me one of the details of this incident until she finally spoke with the third police officer after which she had had time to go over things with her mother and the times relevant to the incident.
>
> So I want [the victim's girlfriend] to testify because [she] did not testify to any details as to where the intercourse took place. [She] testified that [the victim] told her it happened at one o'clock, which was totally impossible and I wanted that stuff to come out because I had—we had spoken to [her] prior to trial.

N.T. March 22, 1984 at 17–18. Furthermore, counsel stated that he felt that the victim's and her friend's testimony

were inconsistent "in terms of where the incident occurred and in terms of the time it occurred." *Id.* at 18. We will not second guess trial counsel's strategy here. It is evident that counsel sought to undermine the victim's credibility by highlighting inconsistencies in her testimony and by suggesting that she may have invented the story.

■ Next, appellant alleges that trial counsel was ineffective in failing to call an expert witness, a Dr. Gestoso, who had examined the victim before Dr. Bossard and could have rebutted her testimony, thus casting doubt on the victim's accusations against him. Dr. Gestoso examined the victim at the emergency room of a local hospital. *See* N.T. November 18, 1983 at 39–40. He told trial counsel's investigator that he saw no signs of trauma or bruises and that, in his opinion, the victim had not had sexual intercourse within forty-eight hours of his examination. *See* N.T. March 22, 1984 at 19. However, trial counsel certainly had a reasonable basis for not calling Dr. Gestoso: as counsel testified, Dr. Gestoso adopted what Dr. Bossard had testified to at trial after counsel went over her testimony with him; he was not an expert; he may have missed some things in the busy emergency room;[16] he hedged on everything; and, for several other reasons, was not a good witness. *See id.* at 20–21.

Appellant argues, nonetheless, that counsel did not testify that Dr. Gestoso's testimony would in any way have weakened appellant's case. *Cf. id.* at 22 (Dr. Gestoso's testimony was "not nearly as helpful as I thought [it] would have been"). We have held that "[t]he failure to call a possible witness will not be equated with a conclusion of ineffectiveness absent some positive demonstration that the testimony would have been helpful to the defense." *Commonwealth v. Bulard*, 305 Pa.Super. 502, 510, 451 A.2d 760, 764 (1982). On the record before us, it is not surprising that appellant has failed to make that showing here.

**16.** At trial, Dr. Bossard testified as to this reason, among others, why Dr. Gestoso may have missed the ecchymosis in his examination two days before hers. N.T. November 18, 1983 at 88–89.

As the lower court put it, "[i]t certainly would not have benefited [appellant] to have Dr. Gestoso confirm what Dr. Bossard said." Lower Court Opinion at 10.

■ Appellant also alleges that trial counsel was ineffective in failing to request a jury charge on the victim's delay in reporting the alleged assault. This claim is meritless. The evidence summarized above belies appellant's sugges-tion that the victim delayed in reporting the assault. *See Commonwealth v. Freeman,* 295 Pa.Superior Ct. 467, 475–77, 441 A.2d 1327, 1331–32 (1982) (testimony by the victim that she reported the alleged rape to others and by the victim's sister-in-law confirming that the victim related the incident to her immediately following its occurrence to show prompt complaint held admissible). We fail to understand, then, how an instruction could have benefited appellant.

■ Appellant next alleges that trial counsel failed to timely object to the prosecutor's expressions of personal belief in her closing argument and to preserve that issue for appeal. He points to the following:

This child would have backed out a long time ago. She would not continue to subject herself to the humiliation and degradation about talking about things that are so embarassing [sic] to her because they picked her up late from babysitting.

* * * * * *

I submit to you, ladies and gentlemen, the details that she supplied for her age, fifth grade, about herself, about the facts—the way it hurts, are details that this child would not be able to testify to you about.

* * * * * *

She supplies all of these details step by step. She couldn't do that if that were not the truth.

N.T., Closing Arguments, November 21, 1983 at 31–32. We agree with the lower court that the prosecutor's comments "were within the boundaries of fair argument from the evidence." Lower Court Opinion at 13. The language employed by the prosecutor is not

"such that its unavoidable effect would be to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward [appellant], so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable to render a true verdict." *Commonwealth v. Wiggins*, 231 Pa.Superior Ct. 71, 77, 328 A.2d 520, 523 (1974) (quoting *Commonwealth v. Meyers*, 290 Pa. 573, 581, 139 A. 374, 377 (1927)). Furthermore, the trial court instructed the jury that the arguments of counsel were not evidence and that, while the jurors could be guided by these arguments, they were to "reject the facts argued to you from the lawyers and accept what you believe to be the facts...." N.T. November 21, 1983 at 86. In light of this instruction, we do not believe, as appellant argues, that the prosecutor's comments were given undue weight by the jury.

Appellant also alleges that his trial counsel was ineffective in failing to present evidence of the animosity of the victim's family towards him. At the post-trial ineffectiveness hearing, the victim's stepsister testified that she spoke to trial counsel "about different incidents that had happened that we [appellant and she] were accused of robbing my grandmother and killing her." N.T. March 22, 1984 at 37. Trial counsel testified that "[t]here was a lot of hate before" the rape occurred between appellant and the victim's family. *Id.* at 28. Appellant argues that this evidence could have been used to attack the credibility of both the victim and her mother and to provide a motive for the victim's accusations against appellant. These claims are baseless.

 First, appellant himself testified at the ineffectiveness hearing that the accusations involving the grandmother occurred after the rape. *Id.* at 34. Trial counsel stated that he did not have "specific instances" of the hatred, except "that [the victim's mother] didn't like [her son] hanging around with [appellant] because he was older and drinking and things like that." *Id.* at 28. Understandably,

trial counsel decided not to present that evidence. Furthermore, in his direct examinations of the victim's stepsister, trial counsel did present, and attempted to present, evidence of the victim's mother's animosity toward appellant. *See* N.T. November 21, 1983 at 25–27, 83. Lastly, both at trial and the ineffectiveness hearing, appellant testified that he got along with the victim before the rape occurred. N.T. November 21, 1983 at 52; *id.* March 22, 1984 at 34, 35. Accordingly, trial counsel presented the evidence of the victim's family's animosity toward appellant that he had and concluded would be helpful to appellant's defense. He could do no more.

■ Appellant last alleges that trial counsel was ineffective in failing to present character witnesses on his behalf. At the post-trial ineffectiveness hearing, appellant testified that he gave trial counsel the names of character witnesses and expected them to be called at trial. *Id.* at 32–33. Appellant argues that counsel's failure to make use of these witnesses to establish character traits of non-violence and chastity deprived him of an opportunity to show that he was not the kind of person who would commit the instant crimes. We disagree.

"In a rape case, evidence of the character of the defendant would be limited to the presentation of testimony concerning his general reputation in the community with regard to such traits as non-violence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order." *Commonwealth v. Luther*, 317 Pa. Superior Ct. 41, 50, 463 A.2d 1073, 1078 (1983). In *Luther*, we held that

[i]n a case where virtually the only issue is the credibility of the witness for the Commonwealth versus that of the defendant, *failure to explore all available alternatives* to assure that the jury heard the testimony of a known witness who might be capable of casting doubt upon the truthfulness of the Commonwealth witness is ineffective assistance of counsel.

*Id.*, 317 Pa.Superior Ct. at 54, 463 A.2d at 1080 (emphasis added). We find that trial counsel here did explore all available alternatives open to the defense and had a reasonable basis for not calling the character witnesses named by appellant.

Three of the potential witnesses refused to testify because "they were involved in a will contest with the [victim's] mother" and "didn't want [those] facts brought up." N.T. March 22, 1984 at 5. As to the remaining two possible witnesses, counsel explained his strategy as follows:

> [Present counsel:] Would you disagree then that the traits of non-violence, peacefulness, quiteness, good moral character—
>
> [Trial counsel:] (Interposing) When you mention all of those traits, I have to say that some of them are relevant but some of them don't apply to [appellant] as I knew him and as I wished to portray him. I did not wish to portray him as an angel. I wished to portray him as a truthful person who didn't commit—I couldn't do that with the type of things that he was doing and the type of people that he was associating with. Peacefulness, I think that would have been pushing it.
>
> [Present counsel:] Was it part of your rationale then to concentrate on his ability to give truthful testimony and not bring that into question?
>
> [Trial counsel:] Yes.

*Id.* at 7. Consistent with that strategy of portraying appellant as truthful, trial counsel also testified that he did not want appellant's prior conviction for burglary brought to the judge's attention. *Id.* at 8. Thus, this is not a case such as *Luther* wherein

> it [was] clear from a review of the record that [trial counsel's] decision [not to call character witnesses] was not based upon a careful selection between available alternatives—e.g. consideration of the relative value of presenting character testimony through ascertained potential witnesses as opposed to the absence of such testimony—but was essentially grounded upon the fact that,

156

prior to trial, he had failed to identify, interview, select and prepare any potential character witnesses.

*Commonwealth v. Luther, supra,* 317 Pa.Superior Ct. at 52, 463 A.2d at 1079. Accordingly, we will not second guess counsel's strategy here.

 With respect to appellant's claims of ineffective assistance of counsel, we find pertinent the following comment by the lower court:

It has become routine to raise the issue of ineffectiveness. In fact, it has become epidemic. A second (or third) attorney will always be able to peruse a record and make determinations in hindsight of actions which could have been taken or situations which could have been treated differently.

It is the observation of the trial court from considerable experience litigating criminal cases as well as observation from the perspective of the Bench that this type of case requires considerable skill and finesse to defend. Trial counsel did an excellent job. His strategy was well thought out in advance. He handled the case with a sensitivity calculated not to offend the jury and, therefor, to serve his client's best interests.

He called numerous witnesses, properly cross-examined the Commonwealth's witnesses and raised objections where appropriate. This Court notes that trial counsel is employed full-time in the Public Defender's Office of Bucks County and has been associated with that office since 1979. [N.T. March 22, 1984 at 30]. He has appeared before this Court on numerous occasions and has always prove[n] himself to be a competent, zealous advocate. We find that in the present action, trial counsel consistently pursued a reasonable trial strategy.

Lower Court Opinion at 17–18. We would add only that, even were we to assume that trial counsel was in some way ineffective, none of his actions so prejudiced appellant as to deprive him of a fair trial. We note that counsel successfully defended appellant against the rape charge, a felony of the first degree, 18 Pa.C.S.A. § 3121, that carries a maxi-

mum term of twenty years, *id.* § 1103(1), twice the maximum appellant received here.

## IV

We next consider appellant's contentions with regard to his sentence. Before we do so, we note that appellant was evidently sentenced only for the crime of statutory rape. Under the sentencing guidelines created by the Pennsylvania Commission on Sentencing, *supra*, statutory rape carries an offense gravity score of five. 204 Pa.Code § 303.8. Appellant received a prior record score, *see id.* § 303.7, of five. *See* Pennsylvania Commission on Sentencing, Guideline Sentence Form (Guideline Sentence Form) (docket entry no. 40). The guideline ranges for an offense gravity score and a prior record score of five are as follows: twenty-one-to-thirty months (minimum range), thirty-to-thirty-eight months (aggravated minimum range), sixteen-to-twenty-one months (mitigated minimum range). 204 Pa. Code § 303.9. The trial court sentenced appellant to a minimum term of thirty-eight months, the upper limit of the aggravated minimum range. *See* N.T. August 29, 1984 at 18 ("I think this [case] falls within the aggravated range."); *see* also Guideline Sentence Form § VII (trial court's setting forth aggravating factors).

██ Neither appellant nor the Commonwealth has raised the issue of sentencing on the other three guilty verdicts, indecent assault, indecent exposure, and corruption of minors. While the crime of corrupting the morals of a minor is a lesser included offense of statutory rape and is therefore merged into a statutory rape conviction, *Commonwealth v. Stafford*, 307 Pa.Superior Ct. 278, 283, 453 A.2d 351, 353 (1982), it is not clear whether indecent assault and indecent exposure so merge, though they may merge with one another. *See and compare Commonwealth v. Whetstine*, 344 Pa.Superior Ct. 246, 253, 496 A.2d 777, 781 (1985) (where Commonwealth relied on the same facts to prove indecent assault and indecent exposure, crimes found merged); *Commonwealth v. Ruehling*, 232 Pa.Superior Ct.

378, 383–84, 334 A.2d 702, 704–05 (1975) (if Commonwealth proves element of offensiveness of crime of indecent assault, indecent assault and statutory rape crimes do not merge). Because we are remanding this case for resentencing, we believe that the trial court should clarify its new sentence by stating whether it finds the other three charges merged, or whether it was imposing a sentence of guilty without further penalty on those charges, *see* 42 Pa.C.S.A. § 9723 (court may impose a sentence of guilty without further penalty); *id.* § 9721(a) (former is one of five sentencing alternatives).

■ Appellant first contends that the sentencing guidelines are unconstitutional because (1) they were not enacted as a bill, Pa. Const. art. III, § 1; and (2) they constitute an improper delegation of legislative authority, *id.* art. II, § 1; art. III, § 1. These claims are waived because appellant failed to include them in his motion to modify or reconsider sentence. *Commonwealth v. Duffy,* 341 Pa.Superior Ct. 217, 221, 491 A.2d 230, 231 (1985). Even if we did not find them waived, we would find them meritless. This Court rejected these same contentions in *Commonwealth v. Kuphal,* 347 Pa.Superior Ct. 572, 576 & n. 2, 500 A.2d 1205, 1207 & n. 2 (1985) (*en banc*).[17]

Appellant last contends that his prior misdemeanor convictions not involving the use of a deadly weapon were improperly used by the lower court in computing his prior record score under the sentencing guidelines because the Pennsylvania Commission on Sentencing had no authority to allow their use for that purpose. We agree.

■ It is well-settled that "[o]nly those powers within the legislative grant, either express or necessarily implied,

17. Five judges of the nine-judge *en banc* panel found the legislative veto provision, *see* 42 Pa.C.S.A. § 2155(b), of the enabling legislation providing for the creation of the Pennsylvania Commission on Sentencing and the adoption of the sentencing guidelines, *id.* §§ 2151–2155, unconstitutional. However, because Judge Beck, concurring, found the provision providing for the veto severable, the sentencing guidelines, adopted pursuant to the remaining provisions of the enabling legislation, were held valid.

can be exercised by [an] administrative body." *See, e.g., Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 310, 382 A.2d 731, 736 (1978). Furthermore, "an administrative body cannot violate a statutory mandate even though acting within the *general* jurisdiction conferred upon it by the statute." *Hotel Casey Co. v. Ross*, 343 Pa. 573, 585, 23 A.2d 737, 743 (1942) (emphasis in state reporter only). Thus, while it was undoubtedly the Sentencing Commission's duty to adopt sentencing guidelines, a reading of the plain language of the authorizing legislation compels the conclusion that the Commission had no authority to include misdemeanors not involving the use of a deadly weapon in the computation of prior record scores.

The Legislature, in the act authorizing the creation of the Pennsylvania Commission on Sentencing, 42 Pa.C.S.A. §§ 2151–2155, directed it to adopt sentencing guidelines that "shall: ... [s]pecify a range of sentence of increased severity for defendants previously convicted of *a felony or felonies or convicted of a crime involving the use of a deadly weapon." Id.* § 2154(2) (emphasis added). Accordingly, the Commission was directed to increase sentences for defendants under two circumstances: when they had prior felony convictions and when they had prior convictions for crimes "involving the use of a deadly weapon." Pursuant to its statutory mandate, the Commission did both. *See* 204 Pa.Code § 303.7(b)(1)(i), (b)(2)(i), (b)(2)(ii) (scoring of felonies); *id.* § 303.7(b)(1)(i), (b)(2)(iii) (scoring of weapons misdemeanors).[18] The Commission, however, went further and provided that one point would be added to a defendant's prior record score if he or she was previously convicted of two or three other misdemeanors not already scored under the provisions just cited, *id.* § 303.7(a)(1), and two points would be added to a defendant's prior record score if he or she was previously convicted of four or more misdemeanors not scored, *id.* § 303.7(a)(2). This the Commission had no power to do.

18. These offenses are listed in 204 Pa.Code § 303.7(a)(3).

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). The language of the enabling act at issue here, § 2154(2), is plate-glass-clear: [19] it does not state that the sentencing guidelines shall specify a range of sentences of increased severity for defendants previously convicted of misdemeanors *not* involving the use of a deadly weapon. If the Legislature wants to provide for such sentences, it must explicitly so state in the authorizing statute.

■ Moreover, because § 2154(2) authorized the creation of guidelines "which *shall* be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant," (emphasis added), *see also* 42 Pa.C.S.A. § 9721(b); 204 Pa.Code § 303.1(a), it is, in a sense, a penal provision. As such, it "shall be strictly construed." 1 Pa.C.S.A. § 1928(b). We are constrained, therefore, to find that, in computing a defendant's prior record score for sentencing purposes, a sentencing court cannot count that defendant's prior misdemeanor convictions not involving the use of a deadly weapon.

■ The Commonwealth argues, however, that, if the Legislature did not intend to have all misdemeanors utilized in computing a defendant's prior record score, it could have rejected the Commission's guidelines under its legislative veto power in 42 Pa.C.S.A. § 2155(b). Brief for the Commonwealth at 32.[20] By not rejecting the sentencing guidelines as presently written, however, the Legislature did not thereby change § 2154(2) to provide that *all* misdemeanors could be used in computing prior record scores. "[T]he Pennsylvania Constitution provides that the legislative power of the Commonwealth, which is vested in both Houses of the General Assembly, may be exercised only with the

**19.** The phrase is Justice Musmanno's from *Loeb v. Watkins,* 428 Pa. 480, 483, 240 A.2d 513, 515 (1968).

**20.** The legislative veto provision was declared unconstitutional. *See supra* note 17.

concurrence of both Houses *and after presentment to the Governor.* Pa. Const. art. II, § 1; art. III, §§ 1, 4, 5, and 9; art. IV, § 15." *Commonwealth v. Kuphal,* 347 Pa.Superior Ct. 572, 575, 500 A.2d 1205, 1206 (1985) (*en banc*) (emphasis in original) (citing *id.,* 347 Pa.Superior Ct. at 590, 500 A.2d at 1214 (SPAETH, P.J., dissenting)); *see also Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 957 n. 22, 103 S.Ct. 2764, 2787 n. 22, 77 L.Ed.2d 317 (1982) (Congress cannot enact proposals "by mere silence"). Therefore, the Legislature could not rewrite § 2154(2) simply by failing to reject the Sentencing Commission's guidelines. Instead, both Houses would have to pass an act amending § 2154(2) and then present the act to the Governor. *Cf. Commonwealth v. Kuphal, supra* (because the Legislature's rejection of the first proposed set of sentencing guidelines did not change prior law, *i.e.,* the procedure sentencing judges would follow, but merely maintained the status quo, there was no exercise of legislative power requiring presentment to the Governor). The Commonwealth's claim would have us ignore the system of governance created by our state constitution.

■ Appellant was clearly prejudiced here by the use of his prior misdemeanor convictions not involving the use of a deadly weapon. He received two points for a prior burglary (felony) conviction, 204 Pa.Code § 303.7(b)(2)(ii), one point for a weapons misdemeanor, *id.* § 303.7(b)(2)(iii), and two points for having four or more prior misdemeanor convictions not involving the use of a deadly weapon, *id.* § 303.7(a)(2).[21] Thus, appellant should have received a prior record score of three, not five. The sentencing guidelines for a defendant with an offense gravity score of five and a prior record score of three are as follows:

eight-to-twelve months (minimum range), twelve-to-eighteen months (aggravated minimum range), four-to-eight months (mitigated minimum range). Here, appellant received a

21. These point numbers are taken from the Guideline Sentence Form. The record does not indicate the specific prior misdemeanors of which appellant was convicted.

minimum sentence of thirty-eight months. Under the guideline ranges just quoted, the maximum minimum sentence he could receive is eighteen months.[22] Accordingly, because appellant's prior record score must be recomputed, we vacate the judgment of sentence and remand this case for resentencing and clarification as discussed above.

Judgment of sentence is vacated. Case is remanded for resentencing consistent with this opinion. Jurisdiction is relinquished.

22. Of course a sentencing court can sentence a defendant outside of the sentencing guideline ranges, but the court must explain on the record and in the defendant's presence why it is doing so. *See Commonwealth v. Catapano,* 347 Pa.Superior Ct. 375, 500 A.2d 882 (1985). "Even if a sentencing court sentences a defendant within the aggravated or mitigated minimum ranges, it must state reasons on the record therefor. 204 Pa.Code § 303.3(2)." *Id.,* 347 Pa.Superior Ct. at 382 n. 4, 500 A.2d at 885 n. 4.